[No. 26876-4-III. Division Three. April 21, 2009.]

DEBBIE ROTHWELL, *Appellant*, v. NINE MILE FALLS SCHOOL DISTRICT ET AL., *Respondents*.

---

[16] *See* LAWS OF 2007, ch. 199, §§ 1, 8.

*William J. Powell* (of *Powell Kuznetz & Parker, PS*), for appellant.

*Michael E. McFarland, Jr.*, for respondents.

¶1 SCHULTHEIS, C.J. — Debbie Rothwell appeals the dismissal of her lawsuit against Nine Mile Falls School District (District) and its superintendent, Michael Green. The question before us is whether Ms. Rothwell's claims are barred by the Washington Industrial Insurance Act (Act), Title 51 RCW, which provides the exclusive remedy for injuries occurring in the course of employment and for industrial injuries or occupational diseases. We conclude that the Act does not bar her claims and reverse the trial court's dismissal of her lawsuit.

## FACTS

¶2 In December 2004, Ms. Rothwell had been employed by Nine Mile Falls School District as a custodian for approximately eight years. On December 10, Ms. Rothwell was scheduled to work the second shift, from 11:30 a.m. until 8:00 p.m., at Lakeside High School. She split her shift that day with a co-worker and was scheduled to begin work at 4:00 p.m.

¶3 Around 1:30 p.m., Ms. Rothwell received a phone call from the chief building custodian for the high school. He stated that Ms. Rothwell's co-worker was distraught and needed to go home. Ms. Rothwell was told to report to work, but was not told why. She later learned that a student had committed suicide in the main entrance of the high school by shooting himself in the head.

¶4 When Ms. Rothwell arrived at the school, she was initially placed on duty at the front gate of the high school to prevent the media and unauthorized individuals from entering the school grounds. She remained at that location until approximately 3:30 p.m., at which time the school vice principal asked her to go inside the building.

¶5 After Ms. Rothwell arrived inside the school building, Superintendent Michael Green ordered her to clean up the scene of the suicide. Superintendent Green repeated the order three times. Based on Superintendent Green's orders, Ms. Rothwell walked to the school entryway where the

shooting had taken place. Two deputies and a detective were present. Ms. Rothwell overheard the detective say the name of the suicide victim. After learning that the victim was a student whom she knew personally, Ms. Rothwell became very distraught and upset. She then went to her car and left the school grounds for approximately 30 minutes to compose herself.

¶6 When she returned, one of the deputies told Ms. Rothwell that she was not allowed to touch anything at the scene. Bob Anacker, the Lakeside High School principal, then ordered Ms. Rothwell to go through the classrooms where the suicide victim had attended class earlier that day to determine whether he had left any bombs. Ms. Rothwell accompanied Mr. Anacker through various classrooms to search for bombs.

¶7 After she completed the search, deputies gave Ms. Rothwell permission to begin cleaning the suicide scene. She found a book bag in the corner but did not realize that it belonged to the victim. Ms. Rothwell picked it up and began removing items from the area when one of the deputies told her that the bag needed to remain where it was. The deputies did not tell her why, or warn her of the contents of the bag, so she dropped it on the floor.

¶8 The Spokane bomb squad ultimately arrived on the scene and employees were asked to leave the area. Ms. Rothwell complied and went home. When she returned, she watched the bomb squad detonate a pipe from the book bag she had picked up and dropped earlier. According to Ms. Rothwell's complaint, a robot had brought the pipe out of the building and detonated it near the entryway of the school. Ms. Rothwell was shocked and frightened that there may have been a bomb in the bag when she had handled it earlier. Ms. Rothwell also learned that another bomb had been detonated on the football field while she was at home.

¶9 Ms. Rothwell remained at the scene and cleaned all night long. At approximately 1:00 a.m., Superintendent Green ordered her to clean the entryway to the school where soot from the bomb detonation had stained the rock

wall and sidewalk. According to the complaint, Superintendent Green told her to make it look as if nothing had happened at the school. Ms. Rothwell complied with the order.

¶10 At approximately 2:00 a.m., Ms. Rothwell resumed cleaning the suicide scene inside the school. Ms. Rothwell complied with Superintendent Green's directions to clean and dump everything at the scene, which included needles, plastic gloves, brain matter, bone bits, and blood. She finished cleaning at approximately 4:15 a.m. By that time, she was emotionally distraught and physically ill.

¶11 Superintendent Green ordered Ms. Rothwell to return to school the following morning between 7:30 and 8:00 a.m. The school had arranged for counselors to be at the school to assist students and staff with their grief. Ms. Rothwell was required to hand out cookies and coffee to students, parents, and staff members, as well as to guard the school gates.

¶12 For several days thereafter, students and others brought candles and cards to the scene of the suicide. Ms. Rothwell was ordered to clean up those items each night, which was extremely emotionally disturbing to her.

¶13 Ms. Rothwell filed suit against the District and Superintendent Green for intentional and negligent infliction of emotional distress, alleging that she "suffered and continues to suffer physical and emotional distress" as a proximate result of the District's actions. Clerk's Papers (CP) at 6. The District moved to dismiss Ms. Rothwell's claims pursuant to CR 12(b)(6), asserting that because Ms. Rothwell's claimed injury occurred during the course of her employment, her claims were precluded by the Act.

¶14 The trial court granted the District's motion and dismissed the action with prejudice, finding Ms. Rothwell's claims against the District were precluded by the exclusivity provisions of RCW 51.04.010.

¶15 Ms. Rothwell appeals.

## ANALYSIS

¶16 The issue is whether the trial court erred by dismissing Ms. Rothwell's claims against the District based on the exclusivity provisions of the Act, RCW 51.04.010. Ms. Rothwell contends that this action is not barred by the Act because she was not injured in the course of her employment and her claim does not arise out of an industrial injury or occupational disease.

*Standard of Review*

¶17 A trial court's decision to grant a CR 12(b)(6) motion to dismiss is a question of law that we review de novo. *Cutler v. Phillips Petroleum Co.*, 124 Wn.2d 749, 755, 881 P.2d 216 (1994). A complaint may be dismissed by a trial court under CR 12(b)(6) if it fails to state a claim upon which relief can be granted. *Hoffer v. State*, 110 Wn.2d 415, 420, 755 P.2d 781 (1988), *adhered to on recons.*, 113 Wn.2d 148, 776 P.2d 963 (1989). A CR 12(b)(6) motion to dismiss should be granted sparingly. Such dismissal is appropriate only if " 'it appears beyond doubt that the plaintiff can prove no set of facts, consistent with the complaint, which would entitle the plaintiff to relief.' " *Lawson v. State*, 107 Wn.2d 444, 448, 730 P.2d 1308 (1986) (internal quotation marks omitted) (quoting *Bowman v. John Doe Two*, 104 Wn.2d 181, 183, 704 P.2d 140 (1985)).

*Industrial Insurance Act*

¶18 The Act provides the exclusive remedy for workers who are injured during the course of their employment. *Wash. Ins. Guar. Ass'n v. Dep't of Labor & Indus.*, 122 Wn.2d 527, 530, 859 P.2d 592 (1993); RCW 51.04.010. "[T]he guiding principle in construing provisions of the Industrial Insurance Act is that the Act is remedial in nature and is to be liberally construed in order to achieve its purpose of providing compensation to all covered employees injured in their employment, with doubts resolved

in favor of the worker." *Dennis v. Dep't of Labor & Indus.*, 109 Wn.2d 467, 470, 745 P.2d 1295 (1987); *see* RCW 51.32.010.

### a. Course of Employment

¶19 Ms. Rothwell first contends that her action is not barred by the exclusive remedy provision of the Act because it provides coverage only to workers injured in the "course of his or her employment." RCW 51.32.010; RCW 51.08.180. She argues that the Act is inapplicable here because she was not engaged in employment duties when she was ordered to clean up the scene of the student suicide; rather, she was ordered to perform extraordinary clean-up duties that continued long after her normal work shift had ended. She also points out that her job description as a custodian "did not include duties of cleaning up human remains, disposing of hazardous materials, or searching for potential bombs." Br. of Appellant at 9.

¶20 "Acting in the course of employment" is defined as "the worker acting at his or her employer's direction or in the furtherance of his or her employer's business." RCW 51.08.013(1). In determining whether an employee is acting in the course of employment, the court considers whether " 'the employee was, at the time, engaged in the performance of the duties required of him by his contract of employment, or by specific direction of his employer; or, as sometimes stated, whether he was engaged at the time in the furtherance of the employer's interest.' " *Cochran Elec. Co. v. Mahoney*, 129 Wn. App. 687, 693, 121 P.3d 747 (2005) (quoting *Lunz v. Dep't of Labor & Indus.*, 50 Wn.2d 273, 278, 310 P.2d 880 (1957)).

¶21 Ms. Rothwell asserts that she experienced emotional distress and posttraumatic stress disorder (PTSD) as a result of the directives from her supervisors. However, accepting the factual allegations in her complaint as true, Ms. Rothwell was complying with her supervisors' orders and was, therefore, acting in the course of her employment when she suffered the emotional trauma and

stress which led to her PTSD. *See Grimsby v. Samson*, 85 Wn.2d 52, 55, 530 P.2d 291 (1975).

¶22 Ms. Rothwell next argues that she was not acting within the course of her employment because the acts she was ordered and directed to perform were not within her job description as a custodian. RCW 51.08.013(1) specifically provides that in order to find that a worker was acting in the course of employment, "[i]t is not necessary that at the time an injury is sustained by a worker he or she is doing the work on which his or her compensation is based."

¶23 Thus, the fact that Ms. Rothwell's job description did not include the duties of cleaning up human remains, disposing of hazardous materials, or searching for potential bombs, or that Ms. Rothwell was not trained for these tasks, does not resolve whether she was acting in the course of employment. Instead, the dispositive question is whether Ms. Rothwell was acting at the direction of her employer or in the furtherance of her employer's interest. Based on the facts here, we conclude that Ms. Rothwell was acting in the course of employment for purposes of RCW 51.08.013.

b. Injury or Occupational Disease under the Act

¶24 Next, Ms. Rothwell contends that her action is not barred by the Act because her claims are not based on an "injury" or "occupational disease" as defined by the Act. Ms. Rothwell points out that the Act only precludes tort claims that arise out of an "injury" or "occupational disease" that is compensable under the Act. She also notes that the Act does not provide the exclusive remedy if the work-related condition or disease falls outside its basic coverage.

■■ ¶25 An industrial "injury" is defined in the Act as a "sudden and tangible happening, of a traumatic nature, producing an immediate or prompt result, and occurring from without, and such physical conditions as result therefrom." RCW 51.08.100. "Occupational disease" is defined as "such disease or infection as arises naturally and proximately out of employment." RCW 51.08.140. While there are no stress-related exclusions for industrial injury claims,

RCW 51.08.142 and WAC 296-14-300 expressly provide that "claims based on mental conditions or mental disabilities caused by stress do not fall within the definition of occupational disease in RCW 51.08.140." RCW 51.08.142; WAC 296-14-300(1); *Boeing Co. v. Key*, 101 Wn. App. 629, 632, 5 P.3d 16 (2000).

¶26 Pursuant to WAC 296-14-300(1), mental conditions caused by stress that do not fall within occupational disease specifically include: conflicts with a supervisor; actual or perceived threat of loss of a job, demotion, or disciplinary action; relationships with supervisors, co-workers, or the public; fear of exposure to chemicals, radiation biohazards, or other perceived hazards; objective or subjective stresses of employment; and personnel decisions.

¶27 However, WAC 296-14-300(2) provides that "[s]tress resulting from exposure to a *single traumatic event*" is treated as an injury under RCW 51.08.100. (Emphasis added.) Accordingly, a mental condition can qualify as an industrial injury under RCW 51.08.100, and therefore fall within the coverage of the Act, if the condition resulted from a sudden, tangible, and traumatic event that produced an immediate result. RCW 51.08.100; *Boeing*, 101 Wn. App. at 633-34.

¶28 Ms. Rothwell correctly argues that her claim is specifically excluded from the statutory definition of an "occupational disease." She also contends that her PTSD was not the result of a single traumatic event. She asserts that the directives and orders from the District and her performance of traumatizing duties over a period of several days caused her PTSD. Therefore, she argues that her stress-induced mental condition is also not an industrial injury under the Act.

¶29 As noted above, a mental condition "resulting from exposure to a single traumatic event" is considered an "injury" under the Act. WAC 296-14-300(2). RCW 51.08.100 defines "injury" as "a sudden and tangible happening, of a traumatic nature, producing an immediate or prompt result." The trauma which is relied upon as the "sudden and

tangible happening," whether emotional or physical, must be "of some notoriety, fixed as to time and susceptible of investigation." *Lehtinen v. Weyerhaeuser Co.*, 63 Wn.2d 456, 458, 387 P.2d 760 (1963).

¶30 Here, the emotionally traumatic experiences suffered by Ms. Rothwell after the suicide did not occur suddenly or have an immediate result. Ms. Rothwell was given a series of orders by various supervisors, including the school vice principal, principal, and district superintendent. Ms. Rothwell performed those duties not only on the day of the incident and the following morning, but for several days thereafter.

¶31 Moreover, Ms. Rothwell's mental condition is not the result of any one particular or identifiable task ordered by the District. Her condition could have resulted from the stress of cleaning up the suicide scene, searching for bombs, or discovering that a bag she had handled might have contained an explosive device. Ms. Rothwell also indicates that being ordered to clean up items left by students at the scene of the suicide each night for several days after the event was "extremely emotionally disturbing" to her. CP at 5.

¶32 Over the next few weeks Ms. Rothwell began to exhibit anxiety, sleeplessness, recurring nightmares, frequent crying, and was ultimately diagnosed with PTSD. Under these facts, Ms. Rothwell's mental condition was not the result of exposure to a single traumatic event or a sudden and tangible happening of a traumatic nature. Nor did the trauma produce an immediate and prompt result.

¶33 *Snyder v. Medical Service Corp. of Eastern Washington*, 98 Wn. App. 315, 988 P.2d 1023 (1999), *aff'd*, 145 Wn.2d 233, 35 P.3d 1158 (2001), and *Boeing*, 101 Wn. App. at 632, support our conclusion. In *Snyder*, the plaintiff-employee allegedly suffered from PTSD as a result of her supervisor's intimidating and harassing behavior toward her over a 10-month period. *Snyder*, 98 Wn. App. at 320. Ms. Snyder sued her employer, in part, for intentional and negligent infliction of emotional distress. *Id.* In evaluating whether summary judgment dismissal of her claims was proper, this

court first determined that Ms. Snyder's claims were not barred by the Act because they were not based on an injury under the Act ("a sudden and tangible happening of a traumatic nature"). *Id.* at 321.

¶34 In *Boeing*, the plaintiff-employee worked in an atmosphere described as dysfunctional, tense, and hostile. *Boeing*, 101 Wn. App. at 631. A meeting was held to address the conflict which centered on one of Ms. Key's co-workers *Id.* The following day, Ms. Key was advised that she was not to meet alone with this co-worker. *Id.* However, Ms. Key had three contacts with the co-worker, during which the co-worker was hostile to her. *Id.* At some point, Ms. Key concluded that her co-worker had made some kind of death threat against her. *Id.* Ms. Key had an extreme anxiety reaction and was diagnosed with PTSD. *Id.*

¶35 Ms. Key filed an application for benefits under the Act for PTSD caused by conditions of her work. *Id.* The jury concluded that Ms. Key's stress-related claim did not meet the definition of an "industrial injury" under RCW 51.08-.100. *Id.* at 630. Division One of this court affirmed the verdict, holding that the jury could have found Ms. Key's claim did not constitute an industrial injury "because her emotional distress manifested as a result of events that unfolded gradually over a period of time rather than from a sudden, tangible, traumatic incident that produced an immediate result." *Id.* at 634.

¶36 Similarly here, Ms. Rothwell's PTSD did not result from a single traumatic event; rather, it resulted from a series of incidents over a period of a few days. Furthermore, the trauma did not immediately result in Ms. Rothwell's PTSD. Therefore, we conclude that Ms. Rothwell's PTSD is not an injury or occupational disease under the Act and her claims against the District are not barred by the Act's exclusive remedy provision. We reverse the trial court's dismissal of Ms. Rothwell's claims.

SWEENEY, J., concurs.

¶37 KULIK, J. (dissenting) — RCW 51.08.100 defines "injury" as a "sudden and tangible happening, of a traumatic nature, producing an immediate or prompt result." And the guiding principle in construing the Industrial Insurance Act (Act), Title 51 RCW, is that the "Act is remedial in nature and is to be liberally construed in order to achieve its purpose of providing compensation to all covered employees injured in their employment, with doubts resolved in favor of the worker." *Dennis v. Dep't of Labor & Indus.*, 109 Wn.2d 467, 470, 745 P.2d 1295 (1987); *see* RCW 51.12.010. Here, the mental condition sustained by Debbie Rothwell resulted from cleaning up brain matter, bone, blood, and medical supplies after a student committed suicide by shooting himself in the head. Ms. Rothwell's physical and mental responses occurred suddenly, were tangible, and produced immediate results. Therefore, I disagree with the majority's conclusion that Ms. Rothwell was not covered by the Act, and respectfully dissent.

¶38 As noted in the majority, a mental condition "resulting from exposure to a single traumatic event" is considered an injury under the Act. WAC 296-14-300(2). Even a cautious construction of the Act provides for coverage of Ms. Rothwell's mental condition arising from the sudden, tangible, and traumatic actions of cleaning up a student's remains and searching for bombs. Whether the school administrators asked, directed, instructed, or ordered Ms. Rothwell to assist with these duties does not impact her entitlement to coverage under the Act. The school administrators were dealing with a tragic event and asked for Ms. Rothwell's assistance. Unlike cases of dysfunctional or harassing employee-employer relationships, here the administrators sought the help of Ms. Rothwell. Ms. Rothwell's complaint does not allege she experienced posttraumatic stress disorder (PTSD) because of harassment or discrimination by school administrators.

¶39 The majority agrees, and Ms. Rothwell concedes, that the stress of cleaning up the suicide scene, searching for bombs, and discovering that a bag she handled might

have contained an explosive device all contributed to her mental condition. Immediately after Ms. Rothwell learned the identity of the student, she became physically ill and emotionally distraught, forcing her to leave the school. Later, she looked for bombs, cleaned up soot from the bomb detonation, and cleaned up candles and cards placed at the suicide scene.

¶40 Ms. Rothwell is being penalized by the majority for having a series of traumatic events that she sustained only because she was a dedicated employee who kept returning to ever-increasing emotional tasks at work. Had Ms. Rothwell simply left the school after completing her first task and suffered PTSD, the majority's conclusions would support coverage under the Act as a single, traumatic injury. By focusing on the series of incidents, the majority assumes that the individual incidents did not constitute an industrial injury. Even though these actions occurred over several days, they caused Ms. Rothwell sudden, immediate mental harm.

¶41 The majority cites *Snyder v. Medical Service Corp. of Eastern Washington*[1] and *Boeing Co. v. Key*[2] to conclude that Ms. Rothwell's mental condition does not constitute an industrial injury for purposes of the Act. The majority also suggests that these cases are analogous to Ms. Rothwell's situation because each involved a plaintiff diagnosed with PTSD or other mental condition resulting from harmful employer treatment. But these cases are clearly distinguishable. And the same trial judge ruled correctly in *Snyder*, as he did here, although with opposite results.

¶42 Ms. Snyder allegedly suffered PTSD as a result of her supervisor's intimidating, threatening, belligerent, harassing, and abusive behavior toward her. *Snyder v. Med. Serv. Corp. of E. Wash.*, 98 Wn. App. 315, 320, 988 P.2d 1023 (1999), *aff'd*, 145 Wn.2d 233, 35 P.3d 1158 (2001). The

---

[1] *Snyder v. Med. Serv. Corp. of E. Wash.*, 98 Wn. App. 315, 988 P.2d 1023 (1999), *aff'd*, 145 Wn.2d 233, 35 P.3d 1158 (2001).

[2] *Boeing Co. v. Key*, 101 Wn. App. 629, 5 P.3d 16 (2000).

conduct occurred for over 10 months. We affirmed the trial court's conclusion that Ms. Snyder's claims were not an injury under the Act. In *Boeing*, the evidence at trial showed that the tension and hostility between the plaintiff and her supervisor had been increasing for quite some time. *Boeing Co. v. Key*, 101 Wn. App. 629, 634, 5 P.3d 16 (2000).

¶43 Likewise, in *Wheeler v. Catholic Archdiocese of Seattle*, Catherina Wheeler sued her employer for negligent supervision, claiming that harassment by a co-worker caused her to suffer emotional distress and PTSD. *Wheeler v. Catholic Archdiocese of Seattle*, 65 Wn. App. 552, 565, 829 P.2d 196 (1992), *rev'd on other grounds*, 124 Wn.2d 634, 880 P.2d 29 (1994). The harassment in *Wheeler* occurred for more than one year. The court denied coverage under the Act as it did in *Snyder* and *Boeing*.

¶44 These cases point out that conflicts with supervisors or harassment by supervisors do not constitute an industrial injury. And Ms. Rothwell does not assert either a conflict relationship or harassment. She does not claim the kind of "rude, boorish, overbearing behavior of a supervisor" that occurred for over 10 months in *Snyder*[3] or the harassment in *Wheeler* or *Boeing*.

¶45 Importantly, the decisions of the Board of Industrial Insurance Appeals (Board) also demonstrate that Ms. Rothwell's claim for coverage under the Act would have been accepted as an industrial injury.

¶46 In the Board's decision, *In re Glenn*, No. 05 12322, Bd. of Indus. Ins. Appeals (Wash. July 12, 2006), the Board determined that Ms. Glenn sustained an industrial injury under the Act. Ms. Glenn was subjected to a sudden, traumatic event during the course of her employment when she learned that her employer had committed suicide. Ms. Glenn worked as the assistant for Dr. Greg Tindal, a chiropractor. One morning, Dr. Tindal came to work intoxicated, following several weeks of problem drinking. Ms. Glenn sent him home to sober up. Later that day, while Ms.

---

[3] *Snyder*, 98 Wn. App. at 318.

Glenn was performing office work at home, she was told that Dr. Tindal had shot and killed himself in his backyard. Ms. Glenn felt guilty and partially responsible. She suffered severe depression, anxiety, and physical symptoms including headaches, muscle spasms, heart palpitations, and she developed PTSD due to the incident.

¶47 The Board concluded that hearing of Dr. Tindal's suicide was an industrial injury, a sudden and traumatic event occurring during the course of Ms. Glenn's employment.

¶48 Similarly, in *In re Deneke*, No. 06 17462, Bd. of Indus. Ins. Appeals (Wash. Sept. 24, 2007), the Board concluded that Ms. Deneke suffered an industrial injury. Ms. Deneke worked at a bank and had spoken with a bank robber. While working at the bank, Ms. Deneke learned the robber had been armed with a weapon. She suffered PTSD including symptoms of anxiety, irritability, sleeplessness, and panic attacks. One year later, while working at the bank, Ms. Deneke overheard a co-worker recounting the experience the co-worker had with a robbery. The Board found that "[u]pon hearing the coworker's description of that robbery, Ms. Deneke experienced an immediate onset of anxiety related problems." *Id*. at 4. The event aggravated Ms. Deneke's PTSD, which was caused by her reaction to the bank robbery. The Board concluded that Ms. Deneke sustained an industrial injury from the initial robbery and again, a new and separate injury, when she overheard her co-worker speaking about the co-worker's robbery incident. These Board cases are factually and legally applicable to Ms. Rothwell's case.

¶49 The majority rejects Ms. Rothwell's claim under the Act on the basis that it resulted from a series of incidents over a period of a few days, assuming that Ms. Rothwell's PTSD was not the result of a single traumatic event. While the majority seeks to provide Ms. Rothwell individually with a remedy, the majority's holding that she did not suffer an industrial injury will preclude other workers from being compensated for similar traumatic incidents at work. This

narrow interpretation of industrial injury is contrary to the liberal construction of the Act required by statute and case law.

¶50 Ms. Rothwell's mental condition was caused by a sudden and tangible happening of a traumatic nature. Ms. Rothwell's mental condition caused by the injury is compensable under the Act. The trial court properly granted Nine Mile Falls School District's CR 12(b)(6) motion dismissing Ms. Rothwell's claims.