[No. 30471-0-III.   Division Three.   February 21, 2013.]

DEBBIE ROTHWELL, *Appellant*, v. NINE MILE FALLS SCHOOL DISTRICT ET AL., *Respondents*.

*William J. Powell* (of *Powell Kuznetz & Parker PS*) and *Genevieve Mann* (of *Unemployment Law Project*), for appellant.

*Michael E. McFarland Jr.* (of *Evans Craven & Lackie PS*), for respondents.

¶1 KULIK, J. — Debbie Rothwell appeals the dismissal of her lawsuit against Nine Mile Falls School District (District) and its superintendent, Michael Green, for intentional and negligent infliction of emotional distress. The trial court granted summary judgment in favor of the District on the ground that Ms. Rothwell's action was barred by the Industrial Insurance Act (IIA), RCW 51.04.010, which provides the exclusive remedy for workers who are injured during the course of their employment. We affirm summary judgment. No genuine issue of material fact exists as to whether Ms. Rothwell's posttraumatic stress disorder (PTSD) was an industrial injury under the IIA because the evidence before the court on summary judgment established that the PTSD resulted from a single traumatic event.

## FACTS

¶2 Ms. Rothwell testified to the following events that occurred in December 2004 while she was employed by the District as a custodian.

¶3 On December 10, 2004, around 1:30 p.m., Ms. Rothwell was called into work at Lakeside High School but was

not told why. When Ms. Rothwell arrived, she found out that a young man had attempted suicide inside the school by shooting himself in the head.[1]

¶4 After spending a brief amount of time monitoring the front gate to the school, Ms. Rothwell reported to the office. Once inside, Superintendent Green asked Ms. Rothwell to clean up the scene of the suicide. Ms. Rothwell told Superintendent Green that she did not think she would have a problem cleaning the scene but left to check out the area anyway. When she arrived at the entryway to the school where the shooting had taken place, she was surprised at the size and scope of the scene. Through a deputy at the scene, Ms. Rothwell discovered that she knew the victim. She became very distraught and left school grounds for approximately 30 minutes. Ms. Rothwell returned to the school and reluctantly told Superintendent Green that she would undertake the cleanup.

¶5 Before she was able to begin the cleanup, Bob Anacker, the Lakeside High School principal, requested that Ms. Rothwell go with him and check the classrooms where the victim had attended class. Mr. Anacker had reason to believe that a bomb could possibly be in the school, and he needed Ms. Rothwell's help in determining if anything was out of the ordinary. Ms. Rothwell accompanied Mr. Anacker through various classrooms to look for a bomb. Ms. Rothwell was scared and wanted to leave.

¶6 After the search, Ms. Rothwell and a person assisting in the cleanup began clearing the area where the shooting had occurred. Ms. Rothwell picked up a book bag but was instructed by a deputy to leave the bag. The deputy told Ms. Rothwell that the bag belonged to the victim but did not inform Ms. Rothwell that the bag possibly contained a bomb. She dropped the bag on the floor, and the deputy flinched.

---

[1] At some point later in the evening, Ms. Rothwell found out that the victim had died.

¶7 Following a request from Superintendent Green, Ms. Rothwell left the campus and drove home. Ms. Rothwell tried to eat dinner but threw it up. Although she did not want to go back, she returned to the school. Prior to her return, the bomb squad had exploded the contents of the book bag. Ms. Rothwell was frustrated because the explosion left black soot on the building. Superintendent Green ordered Ms. Rothwell to clean the explosion area before morning.

¶8 Ms. Rothwell and the person assisting her went into the entryway of the school and resumed cleaning the shooting area. She removed medical supplies, brain matter, pieces of bone, and blood. Ms. Rothwell began crying as she was cleaning the scene. She was upset because of her connection to the victim and because she did not have the courage to tell anyone that she did not want to clean up the shooting area. The task was more emotionally difficult for Ms. Rothwell than she anticipated.

¶9 Ms. Rothwell also cleaned the area where the book bag was detonated. Ms. Rothwell remained at the school until 4:00 a.m.

¶10 Superintendent Green ordered Ms. Rothwell to return to the school the following morning, a Saturday. The school had arranged for counselors to assist students with their grief. Ms. Rothwell was required to assist by handing out cookies and coffee and by guarding the school gates. Ms. Rothwell was traumatized by the sounds of the crying students.

¶11 Also, for several weeks thereafter, Ms. Rothwell was ordered to clean up mementos left outside the school. Ms. Rothwell found this task emotionally traumatic because of her connection to the victim.

¶12 *Procedural History.* In May 2007, Ms. Rothwell filed a suit against the District and Superintendent Green, alleging intentional and negligent infliction of emotional distress. The District moved to dismiss Ms. Rothwell's

claims pursuant to CR 12(b)(6), asserting that her claims were precluded by the exclusivity provision of the IIA because her claimed injury occurred during the course of her employment. The trial court granted the District's motion and dismissed the action with prejudice.

¶13 Ms. Rothwell appealed, and the majority of this court reversed the trial court's dismissal of Ms. Rothwell's claims. *Rothwell v. Nine Mile Falls Sch. Dist.*, 149 Wn. App. 771, 782, 206 P.3d 347 (2009). The majority held that Ms. Rothwell's action was not barred by the IIA. *Id.* Basing its decision on the facts alleged in the complaint, the court concluded that her PTSD was not an industrial injury because it did not result from a single traumatic event. *Id.* at 781.

¶14 Ms. Rothwell's action resumed and discovery commenced. Ms. Rothwell produced a report prepared by her mental health counselor, John Baumann. Mr. Baumann stated that Ms. Rothwell's PTSD was "occasioned by having had to clean up some of the remains of a high school student who had shot himself in the entry to the school." Clerk's Papers at 103. Ms. Rothwell also produced a letter from Mr. Baumann in which he diagnosed Ms. Rothwell with PTSD and explained that Ms. Rothwell's symptoms began shortly after her experience of cleaning up the human remains of a completed suicide attempt that occurred at her workplace.

¶15 Additionally, Mr. Baumann testified at a deposition that his diagnosis of Ms. Rothwell's PTSD was based on her exposure to the traumatic event of having to clean up the suicide scene. Mr. Baumann said that he did not discuss with Ms. Rothwell her experience of walking through the building looking for a bomb and, therefore, it would not have been a part of his diagnosis.

¶16 Based on this evidence, the District requested summary judgment on the premise that Ms. Rothwell's PTSD was caused by a single traumatic event—the cleaning of the suicide scene. The trial court denied summary judgment. However, upon reconsideration, the trial court granted

summary judgment in favor of the District. The trial court found that no genuine issue of material fact existed that would preclude the granting of the motion. The trial court agreed with the District that Ms. Rothwell's claim was barred by the IIA because the evidence showed her injury was the result of a single traumatic event, as established by the testimony of Mr. Baumann.

¶17 Ms. Rothwell appeals. Again, we are asked to review whether Ms. Rothwell's claims are barred by the exclusivity provision of the IIA, based on the additional evidence submitted to the trial court following the first appeal.

## ANALYSIS

■ ¶18 An order granting summary judgment is reviewed de novo. *Veit v. Burlington N. Santa Fe Corp.*, 171 Wn.2d 88, 98-99, 249 P.3d 607 (2011). On appeal, the reviewing court considers the same evidence presented to the trial court. *Lybbert v. Grant County*, 141 Wn.2d 29, 34, 1 P.3d 1124 (2000). The facts and all reasonable inferences to be drawn from them are viewed in the light most favorable to the nonmoving party. *Id.*

■ ¶19 Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c). A material fact is one upon which the outcome of litigation depends. *Kinney v. Cook*, 150 Wn. App. 187, 192, 208 P.3d 1 (2009) (quoting *Owen v. Burlington N. Santa Fe R.R.*, 153 Wn.2d 780, 789, 108 P.3d 1220 (2005)).

■ ¶20 A party may move for summary judgment by presenting adequate affidavits to demonstrate the absence of a genuine issue of material fact. *Seven Gables Corp. v. MGM/UA Entm't Co.*, 106 Wn.2d 1, 12-13, 721 P.2d 1 (1986). If successful, the burden shifts to the nonmoving party to set forth specific facts sufficient to rebut the moving party's

contentions and establish the existence of a genuine issue of material fact in the plaintiff's case. *Id.* at 13. The nonmoving party may defeat a motion for summary judgment only with specific facts, rather than relying on bare allegations. *Young v. Key Pharm., Inc.*, 112 Wn.2d 216, 225-26, 770 P.2d 182 (1989).

¶21 Where no genuine issue of material fact exists, a grant of summary judgment is necessary to avoid a useless trial. *Olympic Fish Prods., Inc. v. Lloyd*, 93 Wn.2d 596, 602, 611 P.2d 737 (1980).

¶22 The IIA provides the exclusive remedy for workers who are injured during the course of their employment. *Wash. Ins. Guar. Ass'n v. Dep't of Labor & Indus.*, 122 Wn.2d 527, 530, 859 P.2d 592 (1993); RCW 51.04.010. Thus, the IIA precludes any "state tort claims if those claims arise out of an 'injury' . . . that is compensable under the [IIA]." *Sharpe v. Am. Tel. & Tel. Co.*, 66 F.3d 1045, 1051 (9th Cir. 1995).

¶23 An industrial "injury" is defined in the IIA as "a sudden and tangible happening, of a traumatic nature, producing an immediate or prompt result, and occurring from without, and such physical conditions as result therefrom." RCW 51.08.100. RCW 51.08.100 requires a relation between the injury and "some identifiable happening, event, cause or occurrence capable of being fixed at some point in time and connected with the employment." *Spino v. Dep't of Labor & Indus.*, 1 Wn. App. 730, 733, 463 P.2d 256 (1969). The key is "in the establishment of causation, the connection between the physical [or mental] condition, and employment." *Garrett Freightlines, Inc. v. Dep't of Labor & Indus.*, 45 Wn. App. 335, 342, 725 P.2d 463 (1986).

¶24 An injury related to stress is treated as an industrial injury under RCW 51.08.100 if the stress resulted from "exposure to a single traumatic event." WAC 296-14-300(2). Accordingly, a mental condition caused by stress can qualify as an industrial injury and fall under the coverage of the IIA if the condition resulted from a sudden, tangible, and traumatic event that produced an immediate

result. RCW 51.08.100; *Boeing Co. v. Key*, 101 Wn. App. 629, 632, 5 P.3d 16 (2000). The event, whether emotional or physical, must also be "of some notoriety, fixed as to time and susceptible of investigation." *Lehtinen v. Weyerhaeuser Co.*, 63 Wn.2d 456, 458, 387 P.2d 760 (1963).

¶25 "[T]he guiding principle in construing provisions of the Industrial Insurance Act is that the Act is remedial in nature and is to be liberally construed in order to achieve its purpose of providing compensation to all covered employees injured in their employment, with doubts resolved in favor of the worker." *Dennis v. Dep't of Labor & Indus.*, 109 Wn.2d 467, 470, 745 P.2d 1295 (1987).

¶26 As previously mentioned, this is the second time we are being asked to determine if Ms. Rothwell's tort action is precluded by the exclusivity provision of the IIA. In Ms. Rothwell's prior appeal, this court used the CR 12(b)(6) standard[2] and determined that under the facts presented by Ms. Rothwell, her mental condition was not the result of the exposure to a single traumatic event. *Rothwell*, 149 Wn. App. at 781. As this court recognized, "[Ms. Rothwell's] condition could have resulted from the stress of cleaning up the suicide scene, searching for bombs, or discovering that a bag she had handled might have contained an explosive device." *Id.*

¶27 By contrast, this current appeal requires us to review Ms. Rothwell's action under a CR 56(c) summary judgment standard. To avoid summary judgment on the exclusivity provision of the IIA, Ms. Rothwell needed to set forth specific facts sufficient to raise a genuine issue of material fact as to whether her PTSD resulted from a single

---

[2] Dismissal under a CR 12(b)(6) motion is appropriate only if " 'it appears beyond doubt that the plaintiff can prove no set of facts, consistent with the complaint, which would entitle the plaintiff to relief.' " *Lawson v. State*, 107 Wn.2d 444, 448, 730 P.2d 1308 (1986) (internal quotation marks omitted) (quoting *Bowman v. John Doe*, 104 Wn.2d 181, 183, 704 P.2d 140 (1985)). In a CR 12(b)(6) motion, the plaintiff's factual allegations are accepted as true. *Grimsby v. Samson*, 85 Wn.2d 52, 55, 530 P.2d 291 (1975). Therefore, a complaint can survive a CR 12(b)(6) motion if any set of facts could exist that would justify recovery. *Hoffer v. State*, 110 Wn.2d 415, 420, 755 P.2d 781 (1988).

traumatic event, meaning a sudden, tangible, and traumatic event that produced an immediate result.

¶28 Ms. Rothwell contends that the trial court erred by granting summary judgment because the evidence sufficiently established that multiple events occurred and that all of the events caused her emotional distress. She asserts that the events did not constitute a sudden and tangible happening because the events each consumed several hours, occurred over several weeks, and continued to disturb her for several years.

¶29 We conclude that the trial court did not err by granting summary judgment. No genuine issue of material fact exists as to whether Ms. Rothwell suffered an industrial injury under the IIA. Mr. Baumann's testimony and records established that Ms. Rothwell's PTSD was occasioned by a single traumatic event, the cleanup of the suicide scene. No other evidence was presented as to the cause of Ms. Rothwell's PTSD.

¶30 While Ms. Rothwell contended that the multiple events that occurred after the suicide caused her distress, her assertion was not enough to create a genuine issue of material fact as to whether these other events contributed to her PTSD. In fact, when Mr. Baumann was asked about other events, specifically the building search and Ms. Rothwell's having to remove the cards and flowers, he said that he did not have any information regarding these events. He testified that Ms. Rothwell did not report experiencing PTSD symptoms related to the building search.

¶31 The single event of cleaning up the suicide scene during the course of her employment was a sudden, tangible, and traumatic event that caused an immediate result. Ms. Rothwell testified that she became of aware of the scope of the cleanup when she arrived at the suicide scene, that the amount of blood was more than she expected, and the cleanup was emotionally difficult. The event produced an immediate result, as evidenced by Ms. Rothwell's testimony that she started crying as she was cleaning up the scene.

Mr. Baumann testified that shortly after the experience of the cleanup process, Ms. Rothwell began to suffer nightmares and intrusive recollections about the event that caused her distress.

¶32 The evidence before the trial court on summary judgment established that Ms. Rothwell's PTSD resulted from a single traumatic event and that event was a sudden, tangible, and traumatic event that produced an immediate result. As a matter of law, Ms. Rothwell's PTSD constituted an industrial injury under the IIA. Ms. Rothwell's industrial injury is covered under the exclusivity provision of the IIA. We affirm the order of summary judgment in favor of the District.

SIDDOWAY, A.C.J., and SWEENEY, J., concur.