IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| JULIE D. COOK-CRIST, | ) | No. 81325-1-I |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DEPARTMENT OF LABOR & | ) | UNPUBLISHED OPINION |
| INDUSTRIES of the STATE OF | ) | |
| WASHINGTON, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

VERELLEN, J. — Mental health conditions caused by workplace stress are exempt from coverage as occupational diseases under the Industrial Insurance Act.[1] Julie Cook-Crist applied for workers' compensation benefits for mental health conditions caused by extreme interpersonal conflict with a coworker and fear of losing her job. Because mental health conditions caused by such experiences are not compensable, the Department of Labor and Industries (Department), Board of Industrial Insurance Appeals (Board), and the superior court properly denied her claim as a matter of law. We affirm.

FACTS

Julie Cook-Crist worked as an administrative assistant at Network Communications, Inc. (NCI) from 2007 to 2010. Cook-Crist testified that, in 2008,

---

[1] RCW 51.08.142.

co-worker Andrea North began routinely screaming, using profanity, and lashing out at her without provocation. North also frequently engaged in aggressive behavior such as stomping around the office and slamming doors. Cook-Crist came to dread interactions with North. She was in constant fear of the next outburst, a situation she likened to domestic abuse. Cook-Crist's attempts to address the situation directly with North were not successful, so she sought assistance from her supervisor, Terry Fritz. But Fritz did not adequately address Cook-Crist's concerns. Cook-Crist was constantly anxious and afraid she would be fired from her job, which she otherwise enjoyed. She felt trapped in "fight or flight" mode, was on constant alert, and was very upset nearly all the time.[2]

By March 2010, Cook-Crist felt that her ability to function was severely declining, so she made an appointment with her doctor and contacted NCI's human resources department. On March 15, 2010, Cook-Crist's doctor put her on immediate medical leave from her job. NCI terminated Cook-Crist's employment two days later. Cook-Crist has not worked since then.

On June 20, 2013, Cook-Crist filed an application for workers' compensation benefits resulting from "work conditions/environment that included repeated exposure to psychological abuse due to continual workplace violence."[3] The application listed her diagnoses as depression with anxiety and obsessive compulsive disorder (OCD). On June 25, 2013, the Department denied Cook-

---

[2] Administrative Record (AR) at 591.
[3] AR at 1637.

Crist's claim for benefits on the ground that her condition was not the result of an industrial injury and was not an occupational disease within the meaning of RCW 51.08.140. The Department issued an order affirming its decision on September 9, 2013.

Cook-Crist appealed to the Board. To support her claim, Cook-Crist presented several medical witnesses to testify regarding her mental health conditions and their causes.

Cook-Crist's therapist, Susan Valentine, testified that Cook-Crist's situation at work exacerbated her preexisting OCD. Dr. Laura Brown, a psychologist who evaluated Cook-Crist in 2014, similarly testified that severe workplace stressors at NCI caused a "disabling worsening" of Cook-Crist's OCD symptoms.[4] Dr. Brown also diagnosed Cook-Crist with unspecified depressive disorder, obsessive compulsive personality disorder, and unspecified trauma and stressor-related disorder, with the latter condition proximately caused by Cook-Crist's employment at NCI.

Dr. Richard Adler, a forensic psychiatrist who evaluated Cook-Crist in 2015, testified that he diagnosed her with OCD, unspecified depressive disorder, and unspecified stressor disorder. He opined that Cook-Crist's OCD was physical and brain-based, and that the workplace conditions at NCI aggravated her OCD and depressive disorder and caused her stressor-related disorder. Dr. Adler further opined that the repeated trauma that Cook-Crist was exposed to in the workplace

---

[4] AR at 673.

more likely than not caused physiological changes in brain function at the cellular level.

Dr. Martha Glisky, a clinical neuropsychologist who evaluated Cook-Crist in 2017 and 2018, testified that she diagnosed Cook-Crist with OCD, persistent depressive disorder, adjustment disorder not otherwise specified, and an unspecified neurocognitive disorder. Dr. Glisky also found significant deficits with Cook-Crist's processing speed and executive function. Dr. Glisky testified that Cook-Crist experienced trauma in the workplace due to North's behavior. She opined that trauma, unlike stress, is a psychological and neurobiological disorder that causes physiological changes in the brain. Dr. Glisky opined that Cook-Crist's "physiological response to a trauma was enough to trigger a downward spiral and an increase in some pre-existing symptoms and likely a new onset of others that had been well-managed before this occurred."[5]

After Cook-Crist presented her case, the Department moved for dismissal under CR 41(b)(3). The Department argued that even if Cook-Crist's evidence were accepted as true, she failed to present a prima facie claim for relief as a matter of law because mental health conditions caused by workplace stress are excluded from coverage as occupational diseases under RCW 51.08.142 and WAC 296-14-300. On January 31, 2019, the Board issued a proposed decision and order granting the Department's motion to dismiss and affirmed the order rejecting Cook-Crist's claim. On May 13, 2019, the Board entered a final decision

---

[5] AR at 1239.

4

and order dismissing Cook-Crist's appeal of the Department's order rejecting her claim. In so ruling, the Board entered findings of fact and conclusions of law.

Cook-Crist appealed the Board's decision to superior court. On March 16, 2020, after conducting a de novo review of the record, the superior court affirmed the Board's decision. The superior court ruled that the Board correctly dismissed Cook-Crist's case because her conditions are mental conditions caused at least partly by stress and are therefore excluded from coverage as "occupational diseases" under RCW 51.08.142 and WAC 296-14-300. The superior court also ruled alternatively that Cook-Crist failed to establish that any of her mental conditions arose naturally and proximately from the distinctive conditions of her employment. Cook-Crist appeals.

## ANALYSIS

The Washington Industrial Insurance Act (IAA), Title 51 RCW, governs judicial review of workers' compensation decisions.[6] A worker aggrieved by the Board's decision and order may appeal to the superior court.[7] "In an appeal from the Board, the superior court acts in an appellate capacity and reviews the decision de novo 'based solely on the evidence and testimony presented to the Board.'"[8] "The Board's decision is prima facie correct under RCW 51.52.115, and

---

[6] Rogers v. Dep't of Labor and Indus., 151 Wn. App. 174, 179, 210 P.3d 355 (2009).

[7] RCW 51.52.110.

[8] LaRose v. Dep't of Labor & Indus., 11 Wn. App. 2d 862, 880, 456 P.3d 879 (2020) (quoting Leuluaialii v. Dep't of Labor & Indus., 169 Wn. App. 672, 677, 279 P.3d 515 (2012)), review denied, 195 Wn.2d 1025 (2020).

a party attacking the decision must support its challenge by a preponderance of the evidence."[9]  We review the decision of the superior court rather than the decision of the Board.[10]

The superior court's decision in an industrial insurance appeal is subject to the ordinary standard of review for civil cases.[11]  Here, the superior court affirmed the Board's dismissal of Cook-Crist's appeal under CR 41(b)(3), which provides that a trial court sitting without a jury may grant a motion to dismiss at the close of the plaintiff's case "on the ground that upon the facts and the law the plaintiff has shown no right to relief."  In granting a motion to dismiss under CR 41(b)(3), "the court may weigh the evidence and make a factual determination that the plaintiff has failed to come forth with credible evidence of a prima facie case, or the court may view the evidence in the light most favorable to the plaintiff and rule as a matter of law that the plaintiff has failed to establish a prima facie case."[12]  Where a court has dismissed an action as matter of law, our review is de novo.[13]  Questions of statutory interpretation are also reviewed de novo.[14]  "The liberal

---

[9] Ruse v. Dep't of Labor & Indus., 138 Wn.2d 1, 5, 977 P.2d 570 (1999).

[10] Birgen v. Dep't of Labor & Indus., 186 Wn. App. 851, 856, 347 P.3d 503 (2015).

[11] RCW 51.52.140; Rogers, 151 Wn. App. at 180-81.

[12] Hendrickson v. Dep't of Labor & Indus., 2 Wn. App. 2d 343, 352, 409 P.3d 1162 (2018).

[13] In re Adoption of S.H., 169 Wn. App. 85, 100-01, 279 P.3d 474 (2012) (quoting Commonwealth Real Estate Servs. v. Padilla, 149 Wn. App. 757, 762, 205 P.3d 937 (2009)).

[14] Cockle v. Dep't of Labor and Indus., 142 Wn.2d 801, 807, 16 P.3d 583 (2001).

construction of the IIA necessitates that all doubts be resolved in favor of coverage."[15]  Although the Board's interpretation of the IIA does not bind an appellate court, in most circumstances "'it is entitled to great deference.'"[16]

I.  Occupational Disease

Under the IIA, a worker who suffers disability resulting from an occupational disease is entitled to disability benefits.[17]  RCW 51.08.140 defines an "occupational disease" as "such disease or infection as arises naturally and proximately out of employment."  In 1988, the legislature directed the Department to adopt a rule providing that "claims based on mental conditions or mental disabilities caused by stress do not fall within the statutory definition of occupational disease in RCW 51.08.140."[18]

Pursuant to this plain and unambiguous statutory mandate, the Department adopted WAC 296-14-300.[19]  WAC 296-14-300(1) expressly states that claims "based on mental conditions or mental disabilities caused by stress do not fall within the definition of an occupational disease in RCW 51.08.140."  WAC 296-14-

---

[15] Dep't of Labor & Indus. v. Lyons Enters. Inc., 185 Wn.2d 721, 734, 374 P.3d 1097 (2016).

[16] Richardson v. Dep't of Labor & Indus., 6 Wn. App. 2d at 903 (quoting Weyerhaeuser Co. v. Tri, 117 Wn.2d 128, 138, 814 P.2d 629 (1991)).

[17] RCW 51.32.180.

[18] LAWS OF 1988, ch. 161, § 16, codified as RCW 51.08.142.

[19] Unless expressly stated otherwise, we refer to the regulation in effect at the time of Cook-Crist's claim throughout this opinion.

300(1) provides the following nonexclusive list of workplace stressors that do not fall within the definition of occupational disease:

(a) Change of employment duties;

(b) Conflicts with a supervisor;

(c) Actual or perceived threat of loss of a job, demotion, or disciplinary action;

(d) Relationships with supervisors, coworkers, or the public;

(e) Specific or general job dissatisfaction;

(f)  Work load pressures;

(g) Subjective perceptions of employment conditions or environment;

(h) Loss of job or demotion for whatever reason;

(i)  Fear of exposure to chemicals, radiation biohazards, or other perceived hazards;

(j)  Objective or subjective stresses of employment;

(k) Personnel decisions;

(l)  Actual, perceived, or anticipated financial reversals or difficulties occurring to the businesses of self-employed individuals or corporate officers.

WAC 296-14-300(2) further provides that "[s]tress resulting from exposure to a single traumatic event" is compensable as an industrial injury.  Thus, a mental health condition may qualify for coverage as an industrial injury "if the condition resulted from a sudden, tangible, and traumatic event that produced an immediate

8

result."[20]  Here, however, Cook-Crist's claim is based solely on occupational disease, not industrial injury.

In support of her occupational disease claim, Cook-Crist testified that her conditions were caused by the extreme interpersonal conflict she experienced with North, her supervisor's failure to address her concerns, and fear that the situation with North would cause her to lose her job.  But mental health conditions caused by such workplace stressors are expressly excluded from occupational disease coverage pursuant to WAC 296-14-300(1)(b), (c), and (d) (conflicts with a supervisor, actual or perceived threat of loss of a job, and relationships with supervisors and coworkers).

Cook-Crist nevertheless asserts that her claim is not excluded from coverage because her medical witnesses characterized her workplace experiences as repetitive traumas, not stress.  She contends that RCW 51.08.142 only excludes occupational disease claims for "mental conditions or mental disabilities caused by stress," not by repeated exposure to traumatic events.[21]  She therefore contends that WAC 296-14-300(1) is invalid to the extent that it explicitly or implicitly restricts occupational disease claims based on trauma rather than stress.

---

[20] Rothwell v. Nine Mile Falls School Dist., 149 Wn. App. 771, 780, 206 P.3d 347 (2009) (citing Boeing v. Key, 101 Wn. App. 629, 633-34, 5 P.3d 16 (2000)).

[21] Appellant's Br. at 25.

However, in <u>LaRose v. Department of Labor & Industries</u>, this court recently rejected Cook-Crist's proposed distinction between stress and trauma.[22]  In <u>LaRose</u>, a public defender filed a claim for benefits based on posttraumatic stress disorder (PTSD) and major depressive disorder she developed after being stalked and harassed by a client.  The Department concluded that her condition was not an occupational disease under RCW 51.08.140 and was excluded from coverage under RCW 51.08.142 and WAC 296-14-300.[23]  LaRose argued that the Department exceeded the scope of its statutory authority by amending WAC 296-14-300(2)(d) in 2015 to state that "[r]epeated exposure to traumatic events," none of which meet the rule's definition of a "single traumatic event," is excluded as an occupational disease.  LaRose asserted that the legislature only authorized the Department to exclude occupational disease claims for mental conditions caused by stress, not repeated exposure to traumatic events.[24]

In rejecting LaRose's argument, this court noted that former RCW 51.08.142 expressly directed the Department to exclude stress-related occupational disease coverage for mental conditions and disabilities caused by "[r]epeated exposure to traumatic events."[25]  The <u>LaRose</u> court also noted that in 2018, the legislature amended RCW 51.08.142 to exempt firefighters and law enforcement officers from the statute's exclusion for stress-based mental health

---

[22] 11 Wn. App. 2d 862, 880, 456 P.3d 879 (2020).

[23] <u>Id.</u> at 875.

[24] <u>Id.</u>

[25] <u>Id.</u> at 887-88.

conditions while leaving unchanged the general exclusion for repeated traumatic events.[26]  Legislative acquiescence in the Department's determination that such events are not distinguishable from other excluded workplace stressors is strong evidence that the Department's interpretation is consistent with legislative intent.[27]

Cook-Crist argues that LaRose's holding that repeated traumas do not give rise to an occupational disease claim is inapplicable here because it was based on WAC 296-14-300(2)(d), which was enacted after she filed her claim.  But the LaRose court's ruling was based on the same argument advanced here: that there is a legally relevant distinction in this context between "stress" and "trauma resulting from stress."[28]

Moreover, even prior to the 2015 amendment, courts recognized that multiple traumatic events do not give rise to occupational disease claims.  In Rothwell v. Nine Mile Falls School District, the court concluded that the plaintiff's PTSD did not meet the definition for an occupational disease under RCW 51.08.142 and WAC 296-14-300(1) because it resulted from "a series of incidents over a period of a few days" rather than "from a single traumatic event."[29] In so holding, the Rothwell court recognized that claims for stress are excluded

---

[26] Id. at 890-91.

[27] See Skagit Surveyors & Eng'rs, LLC v. Friends of Skagit County, 135 Wn.2d 542, 566, 958 P.2d 962 (1998) (legislature's failure to amend a statute interpreted by administrative regulation may constitute silent acquiescence in the agency's interpretation of the statute).

[28] See LaRose, 11 Wn. App. 2d at 887-88.

[29] 149 Wn. App. 771, 782, 206 P.3d 347 (2009).

from coverage unless they result from a single sudden traumatic event compensable as an industrial injury.

Cook-Crist further argues that her conditions are not subject to the exclusions set out in RCW 51.08.142 and WAC 296-14-300 because Dr. Adler and Dr. Glisky testified that her conditions have a physiological component and are not purely mental. In defining mental conditions, courts turn to the American Psychiatric Association Diagnostic and Statistical Manual of Mental Disorders (DSM), which is "the authoritative treatise that defines, classifies, and provides criteria to diagnose mental disorders."[30] It is undisputed that Cook-Crist's alleged conditions are mental conditions and that Cook-Crist's experts relied on the DSM-V in diagnosing them. Dr. Adler and Dr. Glisky acknowledged that the DSM-V refers to OCD, depressive disorder, adjustment disorder, and unspecified neurocognitive disorder as mental disorders. Although Cook-Crist's experts emphasized the physiological aspect of her mental disorders, the plain language of the statute makes no such distinction. "[A] court must not add words where the legislature has chosen not to include them."[31] Cook-Crist's expert testimony regarding trauma and physiological changes does not remove her diagnosed mental conditions from the statutory bar.

Because mental health conditions caused by Cook-Crist's workplace experiences are not compensable as an occupational disease, we conclude that

---

[30] LaRose, 11 Wn. App. 2d at 870.

[31] Restaurant Dev., Inc. v. Cananwill, Inc., 150 Wn.2d 674, 682, 80 P.3d 598 (2003).

the superior court properly denied her claim as a matter of law.  We therefore need not reach Cook-Crist's argument that the superior court erred in alternatively ruling that she failed to establish that any of her mental conditions arose naturally and proximately from the distinctive conditions of her employment.

II.  Attorney Fees

Cook-Crist requests attorney fees and costs incurred at the superior court and on appeal under RAP 18.1 and RCW 51.52.130.  RAP 18.1 permits recovery of reasonable attorney fees or expenses on review if applicable law grants that right.  RCW 51.52.130 authorizes an award of fees "[i]f, on appeal to the superior or appellate court from the decision and order of the board, said decision and order is reversed or modified and additional relief is granted to a worker or beneficiary."  Because the superior court did not reverse or modify the Board's decision and order, and we affirm that decision, Cook-Crist is not entitled to an award of attorney fees.

Affirmed.

_____

WE CONCUR:

_____        _____
Chun, J.                       Andrus, A.C.J.

13