**FILED**

**June 9, 2016**

In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| M.A. MORTENSON COMPANY, | ) | No. 33350-7-III |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| KURT R. FOWLER and LYDIG | ) | UNPUBLISHED OPINION |
| CONSTRUCTION, INC., | ) | |
| | ) | |
| Respondents, | ) | |
| | ) | |
| THE DEPARTMENT OF LABOR & | ) | |
| INDUSTRIES OF THE STATE OF | ) | |
| WASHINGTON, | ) | |
| | ) | |
| Defendant. | ) | |

LAWRENCE-BERREY, J. — This case involves a dispute between two self-insured

employers as to which is financially responsible for Kurt Fowler's knee injury sustained

while working for M.A. Mortenson Company (Mortenson) in 2011. Mortenson first

argues that Dr. Lance Brigham's testimony created a sufficient evidentiary basis for a jury

to find that Mr. Fowler did not sustain an industrial injury while working for Mortenson

in 2011, and, therefore, the superior court erred when it granted a directed verdict for Mr.

Fowler on that claim. Mortenson next argues that the superior court erred when it dismissed its request to reopen Mr. Fowler's claim against Lydig Construction (Lydig) so a jury could allocate financial responsibility between Mortenson and Lydig. We disagree with Mortenson's arguments, affirm the superior court, and award reasonable attorney fees and costs on appeal to Mr. Fowler pursuant to RCW 51.52.130.

## FACTS

In February 2008, Mr. Fowler was working for Lydig building a lake house in Chelan. On February 19, Mr. Fowler walked down an uneven muddy slope while carrying a 4' x 10' sheet of plywood. Mr. Fowler tripped and fell. Mr. Fowler finished the workday and did not miss any work.

Following the incident, Mr. Fowler filed an industrial insurance claim against Lydig, claim number SC-70449. Mr. Fowler sought medical treatment from Dr. Andrew Eichler and Dr. Joel Cummings. Dr. Cummings determined that Mr. Fowler's meniscus had a horizontal tear, which is a degenerative condition, and was "most likely preexisting" and not caused by the February 19, 2008 incident. Admin. Record (AR), Joel Cummings, MD, at 69. Rather, Dr. Cummings determined that the February 19, 2008 incident would likely have caused symptoms. Dr. Cummings told Mr. Fowler it was likely a fraying of his meniscus, and that it would eventually improve with time and not

2

require surgery. Dr. Cummings and Mr. Fowler discussed surgery, but Mr. Fowler decided he wanted to wait and see how his knee healed first.

Mr. Fowler had work restrictions for about one month, but eventually returned to his full scope of duties at Lydig. Mr. Fowler recovered from the injury in about one to two months' time. Mr. Fowler did not seek further treatment for his knee. Mr. Fowler got an off-the-shelf knee brace, but only wore it a couple times. Lydig sent Mr. Fowler a letter asking if it could seek to close his claim, and Mr. Fowler agreed that it could. The Department of Labor & Industries (Department) allowed, administered, and closed the Lydig claim on April 30, 2008, without permanent impairment. Mr. Fowler continued to do recreational activities after this time, and his knee did not bother him again until August 2011.

Mr. Fowler started working for Mortenson in May 2010. On August 3, 2011, Mr. Fowler was installing a triangle sign in the entrance to a hospital close to the floor. He kneeled, then twisted his body to get down on the floor. He then felt a "really burning sensation" in his knee—the same knee he had injured in 2008—only this pain was "way more intense" than his previous injury. AR, Kurt Fowler Direct, at 16, 106. Mr. Fowler told his foreman that he was injured, and his foreman told him to wait a few days to see if the pain resolved before he filed a claim. The pain did not resolve, so Mortensen sent Mr.

3

Fowler to see Dr. Richard Lynn, who gave Mr. Fowler formal work restrictions and recommended that he use his knee brace. Mr. Fowler went back to Dr. Cummings after the August 3, 2011 injury and saw him four times. Mr. Fowler eventually decided to proceed with knee arthroscopy, which Dr. Cummings performed.

On August 22, 2011, Mr. Fowler filed a workers' compensation claim against Mortenson, claim number SF-15927. On January 6, 2012, the Department determined that Mr. Fowler was eligible to receive medical treatment and other benefits. Mortensen appealed the Department's decision to give Mr. Fowler benefits to the Board of Industrial Insurance Appeals (Board), which granted Mortensen's appeal.

On May 16, 2012, Mr. Fowler applied to reopen his 2008 claim against Lydig. The Department denied Mr. Fowler's application to reopen the Lydig claim, on the basis that the medical condition caused by the 2008 injury had not worsened since the final claim closure. Mr. Fowler appealed the Department's decision to deny reopening his claim to the Board, which granted his appeal.

The Industrial Appeals Judge (IAJ) issued two pretrial interlocutory orders, one on August 1, 2012, and the next on October 31, 2012. These orders stated that the issues involved in Mortensen's appeal of SF-15927 and Mr. Fowler's appeal of SC-70449 were related, and judicial economy supported consolidating the appeals. All the parties agreed

4

that the sole issues on appeal to the Board were: (1) Whether Mr. Fowler sustained an industrial injury to his right knee in the course of his employment with Mortenson within the meaning of RCW 51.08.100 on August 3, 2011, and (2) Whether between April 30, 2008, and June 1, 2012, Mr. Fowler suffered an objective worsening of his right knee condition, proximately caused by the February 19, 2008 industrial injury at Lydig, within the meaning of RCW 51.32.160.

The Board heard Mr. Fowler's and Mortenson's consolidated appeals on November 27-28, 2012. With respect to Mortenson's appeal of the Department's order granting Mr. Fowler benefits for the 2011 injury, Mortenson presented the testimony of Dr. Lance Bingham, Dr. James Schwartz, Dr. William Dinenberg, and Mr. Fowler. With respect to Mr. Fowler's appeal of the Department's order that denied him from reopening his claim against Lydig for the 2008 injury, Mr. Fowler presented the testimony of himself and Dr. Cummings, and Lydig presented the testimony of Mr. Fowler and Dr. Dana Covey.

Mr. Fowler called Dr. Cummings. Dr. Cummings testified that Mr. Fowler sustained an injury to his knee on August 3, 2011 when he squatted and twisted, and that those movements would lead to symptoms in his meniscus. Dr. Cummings further testified that horizontal meniscus tears—which Mr. Fowler had—are caused by age, never

really structurally go away, and that Mr. Fowler's meniscus tear most likely preexisted the 2008 injury at Lydig. However, Dr. Cummings testified that the swelling, pain, and decreased range of movement in Mr. Fowler's knee were more significant after the 2011 injury, and that Mr. Fowler's 2011 injury contributed to his decision to get surgery on a more-probable-than-not basis. Dr. Cummings further testified that the magnetic resonance imaging (MRI) examinations from after the 2008 injury and after the 2011 injury were very similar.

After more testimony from Mr. Fowler, Lydig presented deposition testimony from Dr. Dana Covey, who Lydig hired to perform an independent medical examination on Mr. Fowler. Dr. Covey testified that Mr. Fowler sustained a knee reinjury on August 3, 2011, when he flexed his knee and then had an acute onset of symptoms. Like Dr. Cummings, Dr. Covey testified that Mr. Fowler had age-related meniscus degeneration that preexisted the 2008 injury he sustained while working for Lydig. The 2008 injury, Dr. Covey testified, was not an acute meniscus tear, and afterward Mr. Fowler's knee improved so that it was suited for the functional tasks of daily life. Like Dr. Cummings, Dr. Covey did not see a difference between the 2008 and 2011 MRIs.

Mortenson first presented Dr. Lance Brigham's deposition. Dr. Brigham is an orthopedic surgeon who reviewed Mr. Fowler's medical records, MRI films, and the

independent medical examinations (IMEs) performed by Drs. Schwartz, Dinenberg, and Covey. Dr. Brigham testified that the 2008 MRI on Mr. Fowler's knee showed a degenerative tear from the Lydig injury. He testified that the movement involved with the Mortenson injury could not have caused the degenerative meniscus tear he saw in the MRI, but that the type of movement involved in the Lydig injury could. He felt like Mr. Fowler's 2011 injury was an aggravation of a preexisting tear, and that the degenerative tissue tears frequently.

Dr. Brigham admitted there was some inconsistency in the medical records with respect to mechanism of injury. Dr. Brigham noted that Mr. Fowler had a degenerative tear in his right meniscus, which is caused by the meniscus wearing out and is not caused by trauma. Thus, Dr. Brigham testified, the 2008 injury did not cause the degenerative tear in Mr. Fowler's knee, but probably aggravated it. He further testified that the 2008 injury was a temporary aggravation, and the meniscus was not going to heal.

The following exchange then occurred:

> [Lydig's counsel:] And based upon your review of the record and the fact that Mr. Fowler filed a claim for the injury for Mortenson, shortly after the injury occurred, and sought treatment two days later, would you agree that he did, in fact, have an industrial injury on August 3rd, 2011, with Mortenson?
> [Dr. Brigham:] Yes.

7

> [Lydig's counsel:] Would you agree that, based upon your review of the records, that as a result of the August 3rd, 2011 injury with Mortenson, he developed symptoms and became symptomatic again?
> [Dr. Brigham:] Correct.

AR, Dep. of Lance Brigham, MD, at 17-18.

Dr. Brigham noted that Mr. Fowler's symptoms were significantly worse after the August 3, 2011 injury. Dr. Brigham testified that, looking at the MRIs between 2008 and 2011, there was no evidence of objective worsening, and that the MRIs were "very similar." AR, Dep. of Lance Brigham, MD, at 18. Dr. Brigham also testified that Mr. Fowler's bending down and twisting on August 3, 2011 was sufficient on its own to have caused a meniscal tear. Dr. Brigham testified that Mr. Fowler had increased complaints of pain following the August 3, 2011 injury.

On redirect examination, Dr. Brigham agreed again that Mr. Fowler sustained an injury on August 3, 2011, but that it was an aggravation of a preexisting condition, given that the 2011 and 2008 MRIs were the same. On recross, however, the following exchange occurred:

> [Lydig's counsel:] And the pain was brought on because he had a new injury on August 3rd, 2011, correct?
> [Dr. Brigham:] No. There was no new injury. The MRI doesn't show new injury.
> [Lydig's counsel:] But you did testify earlier that he did, in fact, have an industrial injury on August 3rd, 2011?
> [Dr. Brigham:] He had something happen to him.

(Long period of silence.)

AR, Dep. of Lance Brigham, MD, at 25.

Mortenson also presented testimony from Dr. William Dinenberg. Dr. Dinenberg personally evaluated Mr. Fowler, and testified that he diagnosed Mr. Fowler with "[a]ggravation of medial meniscus tear of right knee," which he believed "was related to the work injury of 3 August 2011 on a more-probable-than-not basis." AR, Dep. of William Dinenberg, MD, at 18. Dr. Dinenberg testified that the 2008 and 2011 MRIs were "very similar," and that Mr. Fowler's meniscal tear "does not have a chance of healing." AR, Dep. of William Dinenberg, MD, at 18-19. Dr. Dinenberg concluded that Mr. Fowler had a "medial meniscal tear that was caused by the work injury in 2008 but that [Mr. Fowler] was doing reasonably well until he re-aggravated this meniscal tear in the 2011 injury," and that "both cases here would be responsible." AR, Dep. of William Dinenberg, MD, at 21.

Finally, Mortenson presented testimony from Dr. James Schwartz. Dr. Schwartz personally examined Mr. Fowler, and testified that he "saw him for an injury that's dated from August 3rd, 2011. He knelt down, twisted on the knee he was kneeling on, and he had acute pain in his knee." AR, Dep. of James Schwartz, MD, at 8. Mortenson's counsel asked Dr. Schwartz if he had a diagnosis for Mr. Fowler, and Dr. Schwartz

9

testified that he "thought [Mr. Fowler] had a meniscal tear and a medial collateral ligament strain related to the August 3rd, 2011, date of injury." AR, Dep. of James Schwartz, MD, at 12. Like Drs. Brigham and Dinenberg, Dr. Schwartz did not think there were any significant differences between the 2008 and 2011 MRIs. On cross-examination, Lydig's counsel asked:

> [Lydig's counsel:] At the time that you were evaluating Mr. Fowler in October of 2011, based upon your diagnosis, is it fair to say that you would agree that he did, in fact, sustain an industrial injury to his knee while working for Mortenson on August 3rd, 2011?
> [Dr. Schwartz:] Yes.

AR, Dep. of James Schwartz, MD, at 25. However, like Drs. Brigham and Dinenberg, Dr. Schwartz testified that "there was unequivocally a damaged meniscus prior to the 2011 injury." AR, Dep. of James Schwartz, MD, at 27. At the end of the deposition testimony, Lydig moved the IAJ to dismiss both Mortenson's and Mr. Fowler's appeals for failure to present a prima facie case.

On December 13, 2012, Mortenson filed a notice of appearance with the Board as an interested party in the Lydig claim. Because of Mortenson's asserted interest in the Lydig claim, the IAJ moved for a hearing on the issue of "whether these consolidated appeals need to be remanded to the Department for it to issue a single determinative order on all issues *before* the Board might properly address those issues on their merits,"

10

pursuant to WAC 296-14-420. AR at 82. At the hearing on December 19, Mr. Fowler, Mortenson, Lydig, and the Department all advised that they had "no objection to the fact that the Department failed to issue a single determinative order regarding the issues involved in these consolidated appeals." AR at 82. The parties also all advised that they had been "given a full and fair opportunity to present evidence and argument on the merits of these consolidated appeals." AR at 82. Accordingly, without objection from any of the parties, the IAJ decided to not remand the appeals to the Department, to waive the requirement of WAC 296-14-420, and to decide the appeals in a single proposed decision and order.

On January 8, 2013, Mortenson filed a brief with the Board, in which it argued that Mr. Fowler's 2011 injury he sustained at Mortenson was a reaggravation of his prior 2008 injury at Lydig, that this injury would have never occurred but for the Lydig injury, and that Lydig should be required to indemnify Mortenson for the percentage it was responsible for Mr. Fowler's 2011 injury. Lydig responded that it had proved that Mr. Fowler sustained an industrial injury on August 3, 2011, and that his knee had not objectively worsened between 2008 and 2012. Lydig noted that the parties presented the Board with two distinct claims and appeals, which the Board consolidated for the sake of

11

judicial efficiency, but that the issues were independent and the outcome of one case did not dictate the outcome of the other.

On March 11, 2013, the IAJ issued a single proposed decision and order, addressing both appeals. The IAJ denied Lydig's motions for directed verdicts, but concluded that Mr. Fowler sustained an industrial injury on August 3, 2011 while working for Mortenson, and that Mr. Fowler's knee condition did not objectively worsen between April 30, 2008, and June 1, 2012. Thus, the IAJ affirmed the two Department orders that allowed the Mortenson claim and denied reopening the Lydig claim.

Significantly, Mortenson petitioned the Board to review the proposed decision and order only with respect to its claim, which the Board denied. Mr. Fowler did not petition the Board to review the denial of his request to reopen the Lydig claim.

On May 30, 2013, Mortenson appealed the Board's order to the superior court and demanded a jury. On October 21, 2014, Mortenson moved the superior court to remand both claims to the Department for a single determinative order "regarding whether or not benefits shall be paid pursuant to the reopening of an accepted claim or allowed as a claim for a new injury," under WAC 296-14-420. Clerk's Papers (CP) at 135. Lydig responded, arguing that Mortenson had expressly agreed to waive its right to a single determinative order from the Department at the December 19, 2012 hearing, and

12

Mortenson could not now seek to have the case remanded to the Department one week before trial. The superior court denied Mortenson's motion to remand.

Trial in the superior court commenced October 27, 2014, on the same two issues the Board considered: whether Mr. Fowler sustained an industrial injury on August 3, 2011, and whether the injury had objectively worsened to warrant reopening the Lydig claim. The superior court, based on the doctrines of waiver and invited error, denied Mortenson's motion to remand.

At the conclusion of Mortenson's case-in-chief, Mr. Fowler moved for judgment as a matter of law that he sustained an industrial injury on August 3, 2011, and therefore Mortenson owed him workers' compensation. The superior court granted Mr. Fowler's motion. With the Mortenson claim gone, and only the 2008 Lydig claim remaining, Lydig moved to dismiss arguing that Mortenson was not an aggrieved party for the remainder of the issues, and therefore lacked standing. The superior court granted Lydig's motion. The superior court entered an order affirming the Board's decision, and awarded reasonable attorney fees to Mr. Fowler pursuant to RCW 51.52.130.

Mortenson moved the superior court for reconsideration, raising the same arguments, verbatim, it now raises on appeal. The superior court denied Mortenson's motion, finding that each of Mortenson's medical experts—Dr. Brigham included—

13

unanimously opined that Mr. Fowler sustained an industrial injury. The superior court also found that Mortenson was not an aggrieved party and did not have standing to appeal Mr. Fowler's claim against Lydig, because it had waived WAC 296-14-420.

Mortensen appeals.

## ANALYSIS

1. *Standard of Review*

The Industrial Insurance Act (IIA), Title 51 RCW, governs review of workers' compensation cases. The superior court reviews the Board's order de novo, and its review is based solely on the evidence and testimony presented to the Board. RCW 51.52.115. This court reviews the superior court's decision, not the Board's order. RCW 51.52.140. This court reviews the superior court's decision in the same way as it does other civil cases. RCW 51.52.140; *Mason v. Georgia-Pac. Corp.*, 166 Wn. App. 859, 863, 271 P.3d 381 (2012). On appeal to the superior court, the Board's decision is prima facie correct, and a party challenging the decision must support its challenge by a preponderance of the evidence. RCW 51.52.115. This court reviews whether substantial evidence supports the superior court's factual findings and then review, de novo, whether the superior court's conclusions of law flow from those findings. *Rogers v. Dep't of*

14

*Labor & Indus.*, 151 Wn. App. 174, 180, 210 P.3d 355 (2009) (quoting *Watson v. Dep't of Labor & Indus.*, 133 Wn. App. 903, 909, 138 P.3d 177 (2006)).

"A CR 50 motion is properly granted when, 'viewing the evidence most favorable to the nonmoving party, the court can say, as a matter of law, there is no substantial evidence or reasonable inference to sustain a verdict for the nonmoving party.'" *Butson v. Dep't of Labor & Indus.*, 189 Wn. App. 288, 296, 354 P.3d 924 (2015) (quoting *Davis v. Microsoft Corp.*, 149 Wn.2d 521, 531, 70 P.3d 126 (2003)); CR 50(a)(1). "'Substantial evidence is evidence sufficient to persuade a fair-minded, rational person that the premise is true.'" *Butson*, 189 Wn. App. at 296 (quoting *Jenkins v. Weyerhaeuser Co.*, 143 Wn. App. 246, 254, 177 P.3d 180 (2008)). This court reviews the superior court's CR 50 decision de novo. *Id.*

The Board publishes "significant decisions," often interpreting the IIA. RCW 51.52.160. "It is appropriate for this court to consider the [the Board's] interpretation of the laws it is charged with enforcing, in addition to relevant case law." *Stone v. Dep't of Labor & Indus.*, 172 Wn. App. 256, 268, 289 P.3d 720 (2012). This court may "consider these decisions as persuasive but not binding authority." *Id.*

15

2.      *Appropriateness of the superior court directing a verdict that Mr. Fowler sustained an industrial injury on August 3, 2011*

Mortensen first argues that the superior court erred when it decided as a matter of law that Mr. Fowler sustained an industrial injury on August 3, 2011 while working for Mortenson. Mortenson argues that Dr. Brigham created a legally sufficient evidentiary basis for a reasonable jury to have returned a verdict in its favor when Dr. Brigham testified that "'[t]here was no new injury. The MRI doesn't show new injury.'" Br. of Appellant at 10.

The IIA defines an industrial "injury" as "a sudden and tangible happening, of a traumatic nature, producing an immediate or prompt result, and occurring from without, and such physical conditions as result therefrom." RCW 51.08.100. "RCW 51.08.100 requires a relation between the injury and 'some identifiable happening, event, cause or occurrence capable of being fixed at some point in time and connected with the employment.'" *Rothwell v. Nine Mile Falls Sch. Dist.*, 173 Wn. App. 812, 819, 295 P.3d 328 (2013) (quoting *Spino v. Dep't of Labor & Indus.*, 1 Wn. App. 730, 733, 463 P.2d 256 (1969)). "The key is 'in the establishment of causation, the connection between the physical [or mental] condition, and employment.'" *Id.* (quoting *Garrett Freightlines, Inc. v. Dep't of Labor & Indus.*, 45 Wn. App. 335, 342, 725 P.2d 463 (1986)).

16

Here, Mr. Fowler's testimony, Dr. Cummings' testimony, and Dr. Covey's testimony unquestionably establish that Mr. Fowler sustained an industrial injury on August 3, 2011. However, the focus of our inquiry is on Mortenson's evidence, given that the issue of whether the superior court properly granted Mr. Fowler's motion for a judgment as a matter of law depends on whether *Mortenson* provided substantial evidence by which a reasonable jury could sustain a verdict for Mortenson.

A reasonable jury could not have sustained a verdict for Mortenson, based on Mortenson's evidence. All three of Mortenson's witnesses agreed that Mr. Fowler sustained an industrial injury on August 3, 2011, that the event on August 3 reaggravated Mr. Fowler's prior degenerative meniscal tear, and the event caused symptoms. Dr. Dinenberg testified he diagnosed a meniscus tear "related to the work injury of 3 August 2011." AR, Dep. of William Dinenberg, MD, at 18. Dr. Schwartz agreed with Lydig's counsel's question that Mr. Fowler did "in fact, sustain an industrial injury to his knee while working for Mortenson on August 3rd, 2011." AR, Dep. of James Schwartz, MD, at 25. Dr. Brigham also agreed with Lydig's counsel's question that Mr. Fowler "did, in fact, have an industrial injury on August 3rd, 2011, with Mortenson." AR, Dep. of Lance Brigham, MD, at 17-18. Dr. Brigham also agreed that, based on his review of the records, "that as a result of the August 3rd, 2011 injury with Mortenson, [Mr. Fowler]

17

developed symptoms and became symptomatic again." AR, Dep. of Lance Brigham, MD, at 18.

Mortenson, however, argues that Dr. Brigham's testimony on re-cross examination established a legally sufficient evidentiary basis for a reasonable jury to have found for Mortenson, construed in the light most favorable to it:

> [Lydig's counsel:] And the pain was brought on because he had a new injury on August 3rd, 2011, correct?
> [Dr. Brigham:] No. There was no new injury. The MRI doesn't show new injury.
> [Lydig's counsel:] But you did testify earlier that he did, in fact, have an industrial injury on August 3rd, 2011?
> [Dr. Brigham:] He had something happen to him.

AR, Dep. of Lance Brigham, MD, at 25. The context of the testimony demonstrates that Dr. Brigham was not contradicting his earlier testimony. Rather, Dr. Brigham was clear that *something* happened on August 3, 2011. He did not deny that there was a "sudden and tangible happening, of a traumatic nature, producing an immediate or prompt result, and occurring from without," within the meaning of RCW 51.08.100. In the legal sense, Mr. Fowler clearly sustained an industrial injury under RCW 51.08.100 when he kneeled and twisted while installing a plaque, which caused his degenerative meniscal tear to become symptomatic again. On this point, the testimony of all three of Mortenson's doctors is uncontroverted. Dr. Brigham's ambiguous statement on re-cross is not

18

substantial evidence sufficient to persuade a fair-minded, rational jury to have found for Mortenson, especially in light of Dr. Brigham's earlier *unambiguous* statement that he believed Mr. Fowler sustained an industrial injury on August 3, 2011. After reviewing the evidence in the light most favorable to Mortenson, we determine that the superior court correctly directed the verdict that Mr. Fowler sustained an industrial injury while working on August 3, 2011.

3. *Appropriateness of the superior court's decision not allowing Mortenson to reopen the Lydig claim*

Under WAC 296-14-420, the Department is required to issue a singular determinative order "[w]henever an application for benefits is filed where there is a substantial question whether benefits shall be paid pursuant to the reopening of an accepted claim or allowed as a claim for a new injury or occupational disease," as was the case in these claims. "The purpose of this rule is to avoid the possibility of inconsistent results and potential prejudice to a party or parties," and to avoid piecemeal adjudications arising out of related injuries or events. *In re: Tana R. Gerrish*, Nos. 00 21025 & 01 11393, 2002 WL 31427023, at *2 (Wash. Bd. of Indus. Ins. Appeals Aug. 28, 2002). "In some cases, [reviewing courts] have remanded matters to the Department to issue a single determinative order when the Department has failed to comply with this rule." *Id.*

However, this is not always necessary. The Board cited *Gerrish* for its decision to

19

not remand the appeals to the Department, waive the requirement of WAC 296-14-420,

and decide the appeals in a single proposed decision and order. *See* AR at 82. While not

binding authority on this court, this court finds the Board's interpretation of WAC 296-

14-420 persuasive.

In *Gerrish*, the Board held, on facts very similar to these, that

[i]n some cases, we have remanded matters to the Department to issue a single determinative order when the Department has failed to comply with [WAC 296-14-420]. We are not inclined to do so in these appeals, however, because none of the parties to these appeals have raised this issue and objected to the Board deciding these matters on the merits. Further, we have accorded all parties a full and fair opportunity to present evidence and argument about the merits of these appeals. Therefore, we will decide these matters in this single order in the interests of justice and judicial economy.

*Gerrish*, 2002 WL 31427023, at \*2.

The IIA requires that a party aggrieved by a Department decision file an appeal

exclusively to the Board. RCW 51.52.050, .060. Yet, the Board has held that an

employer, other than the one for which the worker was working at the time of the injury,

is not an aggrieved party within the meaning of RCW 51.52.060.[1] *See In re: Kenneth D.*

*Keierleber*, No. 91 5087, 1993 WL 13007751, at \*1 (Wash. Bd. of Indus. Ins. Appeals

---

[1] For the proposition that it is an aggrieved party, Mortenson cites *State v. Taylor*, 150 Wn.2d 599, 80 P.3d 605 (2003). Reply Br. of Appellant at 5. *Taylor* was a criminal case, in which Mr. Taylor sought discretionary review of the superior court's order

No. 33350-7-III
*M.A. Mortenson Co. v. Fowler*

Mar. 1, 1993). This does not mean that an employer in Mortensen's position—wishing to litigate the financial responsibility of an employee's injury against a prior employer—can never be aggrieved as to the prior employer's closed claim. The superior court laid out exactly how this could happen in its order denying reconsideration:

> Had the matter been dealt with in a single order pursuant to WAC 296-14-420, then M. A. Mortenson would have been able to assert it was an aggrieved party assuming the Board's decision was not favorable to Mortenson. But for whatever reason, the parties chose not to follow WAC 296-14-420.

CP at 221.

At the December 19, 2012 hearing, Mortenson told the ALJ that it had "no objection to the fact that the Department failed to issue a single determinative order regarding the issues involved in these consolidated appeals," and acknowledged that it had been "given a full and fair opportunity to present evidence and argument on the merits of these consolidated appeals." AR at 82. Just like in *Gerrish*, where the parties with the interests at stake failed to raise the issue and did not object to the Board deciding the claims on the merits, Mortenson—for reasons that are unclear—invited this error when it expressly waived WAC 296-14-420. It cannot now complain that Lydig is liable for Mr. Fowler's preexisting injury.

---

dismissing the prosecution against him without prejudice, arguing he was an "aggrieved

21

Just as Mortenson did not have standing to appeal the Department order denying reopening of the Lydig claim to the Board, Mortenson does not have standing to appeal that decision to this court now.

4.    *Appropriateness of the superior court's order affirming the May 8, 2013 Board order, and denying Mortenson's motion for reconsideration*

Mortenson argues that the superior court erred when it affirmed the Board's decision, and abused its discretion when it denied Mortenson's motion for reconsideration. But Mortenson's arguments are based on the same arguments as those discussed above. We will not further consider them.

5.    *Attorney Fees*

Mr. Fowler requests an award of reasonable attorney fees and costs on appeal pursuant to RCW 51.52.130(1), which states, in pertinent part:

> If, on appeal to the superior or appellate court from the decision and order of the board . . . in cases where a party other than the worker or beneficiary is the appealing party and the worker's or beneficiary's right to relief is sustained, a reasonable fee for the services of the worker's or beneficiary's attorney shall be fixed by the court. . . . In the case of self-insured employers, the attorney fees fixed by the court, for services before the court only, and the fees of medical and other witnesses and the costs shall be payable directly by the self-insured employer.

party." *Taylor*, 150 Wn.2d at 603. *Taylor* is completely inapposite to this case.

Mortenson, a self-insured employer, unsuccessfully appealed the Board's decision to the superior court, which awarded Mr. Fowler $7,800 in reasonable attorney fees. Mortenson again appealed, and we sustain Mr. Fowler's right to relief. We, therefore, grant Mr. Fowler's request against Mortenson for reasonable attorney fees and costs associated with this appeal.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Lawrence-Berrey, J.

WE CONCUR:

Fearing, C.J.

Siddoway, J.