IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| SHEILA M. LAROSE, | ) | No. 78454-4-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| THE DEPARTMENT OF LABOR AND INDUSTRIES, | ) | PUBLISHED OPINION |
| | ) | |
| Appellant, | ) | |
| | ) | |
| KING COUNTY, | ) | |
| | ) | |
| Defendant. | ) | FILED: January 27, 2020 |

SCHINDLER, J.P.T.* — The right to workers' compensation is statutory. Workers are entitled to disability benefits under the Industrial Insurance Act (IIA), Title 51 RCW, for industrial injuries and occupational diseases. Stress-related mental conditions or mental disabilities that result from a single and sudden traumatic event are compensable as an industrial injury.[1] By contrast, the legislature expressly directed the Department of Labor and Industries (Department) to adopt a rule to exclude "claims based on mental conditions or mental disabilities caused by stress" from coverage as "an occupational disease."[2] Former WAC 296-14-300(1) (1988) excludes claims for mental conditions or mental disabilities caused by stress from coverage as an

---

[1] See RCW 51.08.100.
[2] Former RCW 51.08.142 (1988).

occupational disease. However, former WAC 296-14-300(2) states that a claim for stress resulting from a single exposure to a traumatic event shall be treated as an industrial injury. The Department amended WAC 296-14-300(2) in 2015 to add subsections (b), (c), and (d).[3] Subsection (2)(b) provides examples of what constitutes a "single traumatic event"; (2)(c) describes the ways the single traumatic event must occur; and (2)(d) clarifies that "[r]epeated exposure to traumatic events, none of which are a single traumatic event," is not an industrial injury or an occupational disease, but a single traumatic event "that occurs within a series of exposures will be adjudicated as an industrial injury." WAC 296-14-300. Sheila LaRose filed a workers' compensation occupational disease claim for post-traumatic stress disorder (PTSD) and major depressive disorder. LaRose stipulated her mental conditions were not the result of a single traumatic event but rather, the result of the cumulative effect from repeated traumatic events. The Board of Industrial Appeals (Board) affirmed denial of her occupational disease claim for workers' compensation benefits. The superior court reversed on the grounds that the Department exceeded its statutory authority by adopting WAC 296-14-300(2)(d) precluding "[r]epeated exposure to traumatic events" as an occupational disease. The Department appeals. We hold the Department did not exceed its statutory authority. The 2015 amendment of WAC 296-14-300(2)(d) is consistent with the IIA and the express legislative directive to exclude claims for a mental condition or mental disability caused by stress from coverage as an occupational disease. We reverse the superior court order and the award of attorney fees. We affirm the decision of the Board to deny the occupational disease claim for PTSD and major depressive disorder.

---

[3] Wash. St. Reg. (WSR) 15-19-139 (Oct. 23, 2015).

2

<u>Workers' Compensation</u>

The legislature enacted the Industrial Insurance Act (IIA), Title 51 RCW, in 1911 to create a new system of worker compensation benefits. LAWS OF 1911, ch. 74. The legislature abolished civil actions and made the IIA the exclusive remedy for workplace injuries. RCW 51.04.010; <u>Dennis v. Dep't of Labor & Indus.</u>, 109 Wn.2d 467, 469-70, 745 P.2d 1295 (1987); <u>Dep't of Labor & Indus. v. Lyons Enters., Inc.</u>, 185 Wn.2d 721, 733, 374 P.3d 1097 (2016).[4] The stated intent of the IIA is to provide "sure and certain relief" for injured workers "regardless of questions of fault and to the exclusion of every other remedy." RCW 51.04.010.

When enacted in 1911, there was "no coverage for disability resulting from occupational disease; only injuries sustained performing certain extrahazardous work." <u>Dennis</u>, 109 Wn.2d at 472. The IIA defined an industrial "injury" as "an injury resulting from some fortuitous event as distinguished from the contraction of disease." LAWS OF 1911, ch. 74, § 3. In 1927, the legislature adopted the present definition of industrial injury. LAWS OF 1927, ch. 310, § 2. The IIA defines an industrial "injury" as "a sudden and tangible happening, of a traumatic nature, producing an immediate or prompt result, and occurring from without, and such physical conditions as result therefrom." RCW 51.08.100. A worker must file an industrial injury claim within one year after the date of injury. RCW 51.28.050.

In 1937, the legislature expanded coverage under the IIA for certain diseases. LAWS OF 1937, ch. 212, § 1; <u>Dennis</u>, 109 Wn.2d at 472-73. In 1941, the legislature

---

[4] The statutory bar to sue an employer is subject to two exceptions. Under RCW 51.24.020, an employee may sue the employer for deliberately injuring the employee. Under RCW 51.24.030, an employee may sue a third party for personal injury damages.

eliminated the list of enumerated diseases and enacted the present definition of "occupational disease." Dennis, 109 Wn.2d at 473 (citing LAWS OF 1941, ch. 235, § 1). The IIA defines "occupational disease" as "such disease or infection as arises naturally and proximately out of employment." RCW 51.08.140. A worker "who suffers disability from an occupational disease in the course of employment . . . shall receive the same compensation benefits" and medical care as would be paid to an injured worker under the IIA. RCW 51.32.180. A worker must file an occupational disease claim within two years following receipt of a physician diagnosis. RCW 51.28.055.

Exclusion of Occupational Disease Claims for Mental Conditions Caused by Stress

In Dennis, the Washington Supreme Court addressed whether a disability that results from repetitive work-related aggravation of a pre-existing nonwork-related disease was compensable as an occupational disease. Dennis, 109 Wn.2d at 469.

The court held the IIA is "remedial in nature" and must be "liberally construed in order to achieve its purpose of providing compensation to all covered employees injured in their employment, with doubts resolved in favor of the worker." Dennis, 109 Wn.2d at 470. Citing the purpose of the IIA, the rule of liberal construction in favor of coverage, and the broad definition of occupational disease, the court held the worker was entitled to compensation under the IIA. Dennis, 109 Wn.2d at 474.

> By expressly providing that workers suffering disability from occupational disease be accorded equal treatment with workers suffering a traumatic injury during the course of employment, RCW 51.32.180 effectuates the [IIA]'s purpose of providing sure and certain relief to all workers injured in their employment. The worker whose work acts upon a preexisting disease to produce disability where none existed before is just as injured

in his or her employment as is the worker who contracts a disease as a result of employment conditions.

Dennis, 109 Wn.2d at 471.[5]

In the 1988 legislative session, the legislature enacted a statute directing the director of the Department of Labor and Industries (Department) to adopt a rule to exclude mental conditions and mental disabilities caused by stress from coverage as an occupational disease. LAWS OF 1988, ch. 161, § 16 (codified at RCW 51.08.142). The Final Bill Report states, in pertinent part:

> In a 1987 Washington state supreme court decision, industrial insurance coverage for occupational diseases was extended to certain disabilities caused by repetitive trauma and aggravation of pre-existing nonoccupational diseases. It is not clear whether the court's decision extends coverage to mental stress cases.

FINAL B. REPORT ON ENGROSSED H.B. 1396, 50th Leg., Reg. Sess. (Wash. 1988).

Former WAC 296-14-300 (1988)

In June 1988, the Department adopted a rule excluding occupational disease claims "based on mental conditions or mental disabilities caused by stress." Wash. St. Reg. (WSR) 88-14-011 (June 24, 1988) (codified at WAC 296-14-300, "Mental condition/mental disabilities"). Former WAC 296-14-300(1) (1988) states:

> Claims based on mental conditions or mental disabilities caused by stress do not fall within the definition of an occupational disease in RCW 51.08.140.
> Examples of mental conditions or mental disabilities caused by stress that do not fall within occupational disease shall include, but are not limited to, those conditions and disabilities resulting from:
> (a)  Change of employment duties;
> (b)  Conflicts with a supervisor;
> (c)  Actual or perceived threat of loss of a job, demotion, or disciplinary action;
> (d)  Relationships with supervisors, coworkers, or the public;

---

[5] Emphasis in original.

(e) Specific or general job dissatisfaction;

(f) Work load pressures;

(g) Subjective perceptions of employment conditions or environment;

(h) Loss of job or demotion for whatever reason;

(i) Fear of exposure to chemicals, radiation biohazards, or other perceived hazards;

(j) Objective or subjective stresses of employment;

(k) Personnel decisions;

(l) Actual, perceived, or anticipated financial reversals or difficulties occurring to the businesses of self-employed individuals or corporate officers.

However, consistent with coverage for a stress-related industrial injury under the IIA, former WAC 296-14-300(2) states, "Stress resulting from exposure to a single traumatic event will be adjudicated" as an industrial injury under RCW 51.08.100.

The Diagnostic and Statistical Manual of Mental Disorders

The American Psychiatric Association Diagnostic and Statistical Manual of Mental Disorders (DSM) is the authoritative treatise that defines, classifies, and provides criteria to diagnose mental disorders.

The 1987 third revised edition of the DSM (DSM-3) defined the "essential feature" and symptoms of post-traumatic stress disorder (PTSD) as follows:

The stressor producing this syndrome would be markedly distressing to almost anyone, and is usually experienced with intense fear, terror, and helplessness. The characteristic symptoms involve re-experiencing the traumatic event, avoidance of stimuli associated with the event or numbing of general responsiveness, and increased arousal. The diagnosis is not made if the disturbance lasts less than one month.

DSM-3, at 247.

The 2013 fifth edition of the DSM (DSM-5) made significant changes to the criteria and diagnosis for trauma- and stress-related disorders, including PTSD. The

6

DSM-5 defines PTSD as "a type of trauma and stress related disorder." The DSM-5 identifies the diagnostic criteria for PTSD, in pertinent part:

    B.  Presence of one (or more) of the following intrusion symptoms associated with the traumatic event(s) . . . :

        1.  Recurrent, involuntary, and intrusive distressing memories of the traumatic event(s).

        . . . .

        2.  Recurring distressing dreams in which the content and/or affect of the dream are related to the traumatic event(s).

        . . . .

        3.  Dissociative reactions (e.g., flashbacks) in which the individual feels or acts as if the traumatic event(s) were recurring. . . .

        . . . .

        4.  Intense or prolonged psychological distress at exposure to internal or external cues that symbolize or resemble an aspect of the traumatic event(s).

        5.  Marked psychological reactions to internal or external cues that symbolize or resemble an aspect of the traumatic event(s).

. . . .

    F.  Duration of the disturbance (Criteria B, C, D, and E) is more than 1 month.

    G.  The disturbance causes clinically significant distress or impairment in social, occupational, or other important areas of function.

    H.  The disturbance is not attributable to the physiological effects of a substance (e.g., medication, alcohol) or another medical condition.

Specify whether:

**With dissociative symptoms:** The individual's symptoms meet the criteria for post-traumatic stress disorder, and in addition, in response

7

to the stressor, the individual experiences persistent or recurrent symptoms.

DSM-5, at 271-72.[6]

2015 Amendment to WAC 296-14-300(2)

In June 2015, the Department issued proposed amendments to WAC 296-14-300, Mental condition/mental disabilities; WAC 296-20-330, "Impairments of mental health"; and WAC 296-21-270, "Psychiatric services," consistent with DSM-5:

> In May of 2013, The American Psychiatric Association released the Fifth Edition of the Diagnostic and Statistical Manual of Mental Disorders (DSM-5). [The Department], after seeking the advice of practicing mental health providers and the Industrial Insurance Medical Advisory Committee (IIMAC), is amending rules to adopt the new version of DSM-5 and to aid in the Implementation and consistent use of new DSM versions within the Washington State workers' compensation program.
>
> The purpose of this rulemaking is to make changes necessary to:
> - Amend existing rules that refer to the DSM-IV, its required classification method (axis system), and its assessment instruments, and
> - Clarify how the DSM-5 is implemented within Title 51 RCW.

See WSR 15-12-087 (June 2, 2015).

The Department did not propose changing the language of former WAC 296-14-300(1) that excludes occupational disease claims based on mental conditions or disabilities caused by stress. The Department proposed amending WAC 296-14-300(2)(a) to state, "Stress resulting from extreme exposure to a single traumatic event" will be adjudicated as an industrial injury under RCW 51.08.100. WSR 15-12-087. The Department proposed adding new subsections (b), (c), and (d) to WAC 296-14-300(2). WSR 15-12-087.

---

[6] Emphasis in original.

WAC 296-14-300(2)(b) provides examples of stress resulting from exposure to "an extreme single traumatic event" that will be adjudicated as an industrial injury:

Examples of extreme single traumatic events include: Actual or threatened death, actual or threatened physical assault, actual or threatened sexual assault, and life-threatening traumatic injury.

WSR 15-12-087.

Subsection (2)(c) defined the ways exposure to "an extreme single traumatic event" must occur:

These exposures must occur in one of the following ways:
(i) Directly experiencing the traumatic event; or
(ii) Witnessing, in person, the event as it occurred to others.

WSR 15-12-087.

Subsection (2)(d) stated:

Repeated exposure to aversive details of traumatic events, none of which rises to the level of extreme exposure, is not an industrial injury (see RCW 51.08.100) or an occupational disease (see RCW 51.08.140 and 51.08.142).

WSR 15-12-087.

In response to the comments, the Department made a number of changes to the proposed amendments to WAC 296-14-300(2). The Department identified "four major concerns" that had been expressed about the proposed language of WAC 296-14-300(2):

1) Use of the word "extreme" in WAC 296-14-300[(2)] as it relates to the level of exposure needed in a single traumatic event for an accepted industrial injury claim,
2) [The Department] lacks legislative authority to define stress claims as single traumatic events,
3) [The Department] lacks legislative authority to identify mental health conditions that would not be accepted as an industrial injury or occupational disease, and

4) Concern about identifying "pain diagnoses" as not being industrial injuries or occupational diseases.

The Department agreed to delete use of the word "extreme" except as a diagnostic criteria in subsection (2)(c):

> The department disagrees it lacks authority to define the exposure to a traumatic event. However, upon review, the department agrees that the modifier "extreme" is used in only one of several diagnostic criteria in the DSM-5, and the department will make clarifying changes to use the modifier only in the one criterion.

The Department disagreed it lacked authority to amend WAC 296-14-300(2)(d). The Department notes that subsection (2)(d) "is not a change from the existing WAC requiring a single traumatic event" for an industrial injury.[7] However, the Department agreed to change the language of subsection (2)(d) to clarify that repeated exposure to traumatic events is not a mental condition or mental disability that is either an industrial injury or an occupational disease, but a single traumatic event or a single traumatic event that occurs with a series of exposures is compensable as an industrial injury:

> Based on [former] RCW 51.08.142 [(1988)],[8] repeated exposure to traumatic event(s) none of which, alone, meats the full diagnostic criteria for a single traumatic event (based on the updated criteria In DSM-5) as identified in the proposed rule, is not an occupational disease or an industrial injury. However, the department recognizes that the language in WAC 296-14-300[(2)](d) needs to be changed to clarify that while repeated exposures do not accumulate to one injury or occupational disease, an exposure to a traumatic event that does meet all diagnostic criteria would not be precluded merely because the exposure is part of a series or repeated events.

---

[7] Emphasis in original; boldface omitted.

[8] The legislature amended RCW 51.08.142 in 2018. LAWS OF 2018, ch. 264, § 2.

Workers' Compensation Claim

Sheila LaRose worked as an attorney for the Public Defender Association. LaRose represented a defendant charged with felony stalking from October 2012 through June 2013. In July 2013, King County assumed responsibility as the Public Defender Association's employer.

On April 4, 2016, LaRose filed a workers' compensation claim with self-insured employer King County. LaRose stated she suffered a "psychological injury" from being "stalked and harassed" by a client "multiple" times in "multiple" locations. LaRose identified Dr. Stanley Shyn as her health care provider and "3/21/15" as the "last date" of her "injury."

The Department denied the claim for benefits:

No claim has been filed by said worker within one year after the day upon which the alleged injury occurred.

The worker's condition is not an occupational disease as contemplated by section RCW 51.08.140, and is excluded from coverage pursuant to section [former] RCW 51.08.142 and section WAC 296-14-300.

Appeal to Board of Industrial Insurance Appeals

LaRose appealed denial of her claim for benefits to the Board of Industrial Insurance Appeals (Board). LaRose filed a "Stipulation and Motion for Partial Summary Judgment." LaRose stipulated, "[T]his claim is brought exclusively as an occupational disease, and not as an 'injury' within the meaning of RCW 51.08.100." LaRose stipulated that as a "result of distinctive conditions of her employment, she developed post-traumatic stress disorder and major depressive disorder." LaRose stipulated, "[T]hese conditions were not brought about by a singular incident; rather, these

11

conditions were proximately caused by the cumulative effect of several stalking incidents committed by the same perpetrator."[9]

LaRose argued the 2015 amendment to WAC 296-14-300(2)(d) was invalid as a matter of law. LaRose claimed the legislature authorized the Department to exclude only mental conditions caused by "stress." LaRose argued the Department exceeded the scope of its rulemaking authority under former RCW 51.08.142 by excluding occupational disease claims for mental conditions resulting from "[r]epeated exposure to traumatic events." WAC 296-14-300(2)(d). LaRose asserted the "nature and extent" of her mental conditions "is a factual matter to be proven at hearing through competent medical testimony."

The Department and self-insured employer King County filed cross motions for summary judgment. The Department asserted the Board did not have the authority under the Washington Administrative Procedure Act (WAPA), chapter 34.05 RCW, to address the validity of WAC 296-14-300(2)(d). The Department argued that because LaRose stipulated that the cumulative effect of several stalking incidents committed by the same person caused her mental conditions, the Department was entitled to dismissal as a matter of law. The Department asserted the plain language of former WAC 296-14-300(2) allows a stress-related claim only if the mental condition or mental disability is caused by exposure to a single traumatic event. The Department cited

---

[9] LaRose filed a lawsuit against King County and the Public Defender Association alleging hostile work environment in violation of the Washington Law Against Discrimination, chapter 49.60 RCW, and disability discrimination and negligence claims. The superior court dismissed the negligence claims as barred by the IIA. On appeal, LaRose argued there was a genuine issue of material fact whether her PTSD was a compensable industrial injury. LaRose v. King County, 8 Wn. App. 2d 90, 437 P.3d 701 (2019). In specific, whether she was exposed to a single traumatic event during the course of repeated exposure to traumatic events over several months. LaRose, 8 Wn. App. 2d at 116-19. We concluded there was a genuine issue of material fact as to whether her PTSD constituted an industrial injury under the IIA and reversed dismissal of the negligence claims. LaRose, 8 Wn. App. 2d at 97.

Rothwell v. Nine Mile Falls School District, 149 Wn. App. 771, 206 P.3d 347 (2009), in support of its argument.

In Rothwell, we held the plaintiff's negligence lawsuit was not barred by the IIA. Rothwell, 149 Wn. App. at 781-82. We stated that stress from exposure to a sudden and single traumatic event can qualify as an industrial injury under RCW 51.08.100. Rothwell, 149 Wn. App. at 780. However, because the plaintiff's PTSD was the result of "a series of incidents over a period of a few days" and not "the result of exposure to a single traumatic event," we concluded the plaintiff's PTSD did not meet the definition of an industrial injury or an occupational disease. Rothwell, 149 Wn. App. at 781-82.

King County argued the stipulations of LaRose established that her claim for PTSD and major depressive disorder was not an occupational disease under former RCW 51.08.142 and WAC 296-14-300 "as enacted in 1988 or the 2015 version." King County submitted the declaration of board certified forensic psychiatrist Dr. Aaron Hunt in support of the motion for summary judgment. Dr. Hunt testified the DSM is an "authoritative treatise" that classifies mental disorders and provides "concise and explicit criteria intended to facilitate an assessment of symptom presentation." Dr. Hunt testified that "[t]rauma and stress-related disorders include diagnosis of Post-Traumatic Stress Disorder." Dr. Hunt quotes the DSM-5 to state PTSD is "a type of trauma and stress related disorder" that requires "an antecedent stressor." See DSM-5, at 271. Dr. Hunt notes that "stress" is "a variably defined, non-technical term" that "cannot be equated with the type of stressor required to diagnosis PTSD." Dr. Hunt testified that the diagnosis of PTSD "requires specific and unique antecedent stressors to be present that directly lead to the symptoms observed."

13

The industrial appeals judge (IAJ) denied LaRose's motion for partial summary judgment. The IAJ ruled, "Generally (and specifically in this appeal) the Board does not have authority to rule on the validity of an agency's rule." The IAJ granted the summary judgment motions of the Department and King County and affirmed denial of the occupational disease claim for a mental condition caused by stress under former RCW 51.08.142 and WAC 296-14-300. The findings of fact state, in pertinent part:

2.      The pleadings and evidence submitted by the parties demonstrate that there are no genuine issues as to any material facts in this appeal.

3.      Ms. LaRose applied for benefits under the Industrial Insurance Act based on an occupational disease of post-traumatic stress disorder and major depressive disorder brought about by repeated exposure to traumatic events (none of which amounted to an industrial injury).

4.      Based upon application of [former] RCW 51.08.142 and WAC 296-14-300, the Department denied Ms. LaRose's application for benefits.

The conclusions of law state, in pertinent part:

3.      Ms. LaRose's application for benefits for an occupational disease based upon a mental condition is specifically barred by law.

4.      The Department and King County are entitled to a decision as a matter of law as contemplated by CR 56.

LaRose filed a petition for review to the Board. The Board adopted the proposed decision and order as its final order but modified conclusion of law 3 "to more clearly explain the legal basis for this decision." Conclusion of law 3 states:

Ms. LaRose's Application for Benefits for an occupational disease based on mental conditions resulting from repeated stressful events is not an occupational disease within the meaning of RCW 51.08.140, [former] RCW 51.08.142, and Rothwell.

14

Appeal to Superior Court

LaRose appealed the Board's decision to superior court. LaRose filed a motion for summary judgment. LaRose argued the Department exceeded its statutory authority under former RCW 51.08.142 in amending the language of WAC 296-14-300(2)(d) to state, "Repeated exposure to traumatic events" is excluded as an occupational disease, making the amendment invalid. LaRose asserted that former RCW 51.08.142 allows the Department to adopt a rule that excludes only occupational disease claims based on mental conditions or mental disabilities caused by "stress" but not occupational disease claims for "trauma." LaRose cited dictionary definitions to argue "stress" and "trauma" have "separate and distinct meanings." LaRose sought reversal of the Board decision and remand for a hearing on whether her claim "is a result of stress in the workplace or repeated trauma."

The Department argued that as a matter of law, the 2015 amendment to WAC 296-14-300(2)(d) was valid. The Department asserted the amendment did not exceed statutory authority and was "reasonably consistent with the statute." For the first time, the Department argued that LaRose could not challenge the validity of WAC 296-14-300(2)(d) because the 2015 amendment "was not in effect when her condition became disabling in 2013." The Department also argued that because LaRose did not file a declaratory judgment action, she did not have standing to challenge WAC 296-14-300(2)(d).

For the first time, King County also argued that because the 2015 amendment to WAC 296-14-300(2)(d) "was not in effect at the time her alleged occupational condition manifested" in April 2013, LaRose did not have standing "to challenge the Department's

rulemaking authority."

The superior court rejected the argument that LaRose could not challenge the validity of WAC 296-14-300(2)(d):

> [A]n appellant can raise challenges to the rulemaking authority of the Department in an appeal in Superior Court, where the rule itself is challenged because it is claimed to exceed the bounds of rulemaking authority as applied to this case.

The court ruled the Department and King County waived the right to argue for the first time that the 2015 amendment to WAC 296-14-300(2)(d) did not apply. The court concluded the Department "exceeded it[s] rul[e] making authority" by adopting WAC 296-14-300(2)(d) and "excluding repeated exposure to traumatic events from coverage" as an occupational disease. The court reversed the decision of the Board and remanded to the Board for a hearing on whether LaRose "suffered from stress or trauma." The Department appeals the superior court decision.[10]

Standard of Review

In an appeal from the Board, the superior court acts in an appellate capacity and reviews the decision de novo "based solely on the evidence and testimony presented to the Board." Leuluaialii v. Dep't of Labor & Indus., 169 Wn. App. 672, 677, 279 P.3d 515 (2012); Ruse v. Dep't of Labor & Indus., 138 Wn.2d 1, 5, 977 P.2d 570 (1999).

RCW 51.52.140 governs our review of the superior court decision. RCW 51.52.140 states that an "[a]ppeal shall lie from the judgment of the superior court as in other civil cases." See also Rogers v. Dep't of Labor & Indus., 151 Wn. App. 174, 179-81, 210 P.3d 355 (2009).

---

[10] King County did not appeal but filed a brief in support of the Department. We allowed LaRose to file a brief in response. We deny the motion to strike the brief and award attorney fees.

When reviewing a final administrative decision, we sit "in the same position as the superior court, applying the standards of the WAPA directly to the record before the agency." Tapper v. Emp't Sec. Dep't, 122 Wn.2d 397, 402, 858 P.2d 494 (1993); Brown v. Dep't of Commerce, 184 Wn.2d 509, 544, 359 P.3d 771 (2015). We review the superior court decision on summary judgment de novo. Pearson v. Dep't of Labor & Indus., 164 Wn. App. 426, 431, 262 P.3d 837 (2011). Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c).

Waiver

We conclude the superior court did not err in ruling the Department and King County waived the right to argue for the first time that WAC 296-14-300(2)(d) did not apply. A party on appeal to superior court may raise only those issues that are included in the petition to the Board or the record of the proceedings before the Board. RCW 51.52.115; Value Village v. Vasquez-Ramirez, No. 78629-6-I, slip op. at 9 (Wash. Ct. App. Dec. 30, 2019), http://www.courts.wa.gov/opinions/pdf/786296.pdf.

Validity of WAC 296-14-300(2)(d)

The Department contends the court erred in ruling that the amendment to WAC 296-14-300(2)(d) is an invalid exercise of its rule-making authority under the IIA and former RCW 51.08.142.[11]

Former RCW 51.08.142 states:

**"Occupational disease"—Exclusion of mental conditions caused by stress.** The department shall adopt a rule pursuant to chapter 34.05 RCW that claims based on mental conditions or mental disabilities caused

---

[11] The Department does not assign error to the superior court decision that LaRose had the right to challenge the validity of the adoption of WAC 296-14-300(2)(d). See RCW 34.05.570(3).

by stress do not fall within the definition of occupational disease in RCW 51.08.140.

The construction and meaning of a statute is a question of law we review de novo. Columbia Riverkeeper v. Port of Vancouver USA, 188 Wn.2d 421, 432, 395 P.3d 1031 (2017); Dep't of Ecology v. Campbell & Gwinn, LLC, 146 Wn.2d 1, 9, 43 P.3d 4 (2002); Cockle v. Dep't of Labor & Indus., 142 Wn.2d 801, 807, 16 P.3d 583 (2001). Our objective is to ascertain and give effect to legislative intent. Campbell & Gwinn, 146 Wn.2d at 9. If the legislature's intent is clear from the statute's plain meaning, we "must give effect to that plain meaning." Campbell & Gwinn, 146 Wn.2d at 9-10; Cockle, 142 Wn.2d at 807.

We look first to the text of a statute to determine its meaning. Griffin v. Thurston County Bd. of Health, 165 Wn.2d 50, 55, 196 P.3d 141 (2008). If a statute is plain and unambiguous, the meaning of the statute must be determined from the wording of the statute itself. W. Telepage, Inc. v. City of Tacoma Dep't of Fin., 140 Wn.2d 599, 608-09, 998 P.2d 884 (2000). Where a statute is clear on its face, its plain meaning should " 'be derived from the language of the statute alone.' " Ford Motor Co. v. City of Seattle, Exec. Servs. Dep't, 160 Wn.2d 32, 41, 156 P.3d 185 (2007) (quoting Kilian v. Atkinson, 147 Wn.2d 16, 20, 50 P.3d 638 (2002)).

We construe statutes so that clauses, sentences, and words have meaning. Porter v. Kirkendoll, 194 Wn.2d 194, 211, 449 P.3d 627 (2019) (citing HomeStreet, Inc. v. Dep't of Revenue, 166 Wn.2d 444, 452, 210 P.3d 297 (2009)). If the plain language is subject to only one interpretation, our inquiry is at an end. Lake v. Woodcreek Homeowners Ass'n, 169 Wn.2d 516, 526, 243 P.3d 1283 (2010). Although we must resolve doubts and ambiguities in the language of the IIA in favor of the injured worker,

this provision applies only when doubts or ambiguities exist that must be resolved, and the court will not use the liberal construction requirement to support a " 'strained or unrealistic interpretation' " of the statute. RCW 51.12.010; Cockle, 142 Wn.2d at 811; Birgen v. Dep't of Labor & Indus., 186 Wn. App. 851, 862, 347 P.3d 503 (2015) (quoting Senate Republican Campaign Comm. v. Pub. Disclosure Comm'n, 133 Wn.2d 229, 243, 943 P.2d 1358 (1997)). We must harmonize related statutory provisions to effectuate a consistent statutory scheme that maintains the integrity of the respective statute. Porter, 194 Wn.2d at 212.

The IIA does not exclude industrial injury claims for mental conditions or mental disabilities caused by stress. An industrial "injury" is "a sudden and tangible happening, of a traumatic nature, producing an immediate or prompt result, and occurring from without, and such physical conditions as result therefrom." RCW 51.08.100. In contrast, the legislature has expressly excluded coverage of a mental condition or mental disability caused by stress as an occupational disease. Former RCW 51.08.142. The plain and unambiguous language of former RCW 51.08.142 expressly directs the Department to adopt a rule that excludes "mental conditions or mental disabilities caused by stress" from coverage as an occupational disease.

WAPA governs our review of the validity of an administrative rule and the WAPA standard of review is an overlay to the summary judgment standard. RCW 34.05.570; Verizon Nw., Inc. v. Emp't Sec. Dep't, 164 Wn.2d 909, 915-16, 194 P.3d 255 (2008). The extent of rule-making authority and the validity of an agency rule is a question of law we review de novo. Wash. Hosp. Ass'n v. Dep't of Health, 183 Wn.2d 590, 595, 353 P.3d 1285 (2015); Wash. Pub. Ports Ass'n v. Dep't of Revenue, 148 Wn.2d 637,

645, 62 P.3d 462 (2003); <u>Local 2916, IAFF v. Pub. Emp't Relations Comm'n</u>, 128 Wn.2d 375, 379, 907 P.2d 1204 (1995). An agency rule is invalid if it exceeds the statutory authority of the agency. RCW 34.05.570(2)(c); <u>Swinomish Indian Tribal Cmty. v. Dep't of Ecology</u>, 178 Wn.2d 571, 580, 311 P.3d 6 (2013).

We review Washington Administrative Code regulations under the rules of statutory interpretation. <u>Overlake Hosp. Ass'n v. Dep't of Health</u>, 170 Wn.2d 43, 51-52, 239 P.3d 1095 (2010). We derive the intent of the rule from the plain language, considering the text of the provision and the context and related provisions. <u>Columbia Riverkeeper</u>, 188 Wn.2d at 432; <u>Campbell & Gwinn</u>, 146 Wn.2d at 10.

Where, as here, "the Legislature has specifically delegated the power to make regulations to an administrator, such regulations are presumed to be valid." <u>St. Francis Extended Health Care v. Dep't of Soc. & Health Servs.</u>, 115 Wn.2d 690, 702, 801 P.2d 212 (1990). "The burden of overcoming this presumption rests on the challenger, and judicial review will be limited to a determination of whether the regulation in question is reasonably consistent with the statute being implemented." <u>St. Francis</u>, 115 Wn.2d at 702. An agency may adopt rules necessary to effectuate a statutory scheme. <u>State of Wash. ex rel. Evergreen Freedom Found. v. Wash. Educ. Ass'n</u>, 140 Wn.2d 615, 634, 999 P.2d 602 (2000); <u>Green River Cmty. Coll. v. Higher Educ. Pers. Bd.</u>, 95 Wn.2d 108, 112, 622 P.2d 826 (1980). If " 'the rule is "reasonably consistent with the controlling statute[s]," an agency does not exceed its statutory authority.' " <u>Wash. Hosp. Ass'n</u>, 183 Wn.2d at 595[12] (quoting <u>Swinomish Indian Tribal Cmty.</u>, 178 Wn.2d at 580 (quoting <u>Wash. Pub. Ports Ass'n</u>, 148 Wn.2d at 646)).

---

[12] Alteration in original.

In accord with the express direction of the legislature, former WAC 296-14-300(1) expressly excludes from coverage occupational disease "[c]laims based on mental conditions or mental disabilities caused by stress." Former RCW 51.08.142. Consistent with coverage for an industrial "injury," former WAC 296-14-300(2) states, "Stress resulting from exposure to a single traumatic event will be adjudicated with reference to RCW 51.08.100" as an industrial injury. The 2015 amendment states, "Stress resulting from exposure to a single traumatic event will be adjudicated as an industrial injury. See RCW 51.08.100." WAC 296-14-300(2)(a).

The 2015 amendments add subsections (b), (c), and (d) to WAC 296-14-300(2). WSR 15-19-139. WAC 296-14-300(2)(b) provides specific examples of a "single traumatic event." WAC 296-14-300(2)(c) states, "These exposures must occur in" specific ways. And WAC 296-14-300(2)(d) clarifies, "Repeated exposure to traumatic events, none of which are a single traumatic event as defined in subsection (2)(b) and (c) of this section, is not an industrial injury (see RCW 51.08.100) or an occupational disease (see [former] RCW 51.08.142)."

WAC 296-14-300, Mental condition/mental disabilities, states, in pertinent part:

(1) Claims based on mental conditions or mental disabilities caused by stress do not fall within the definition of an occupational disease in RCW 51.08.140.
Examples of mental conditions or mental disabilities caused by stress that do not fall within occupational disease shall include, but are not limited to, those conditions and disabilities resulting from:
(a) Change of employment duties;
(b) Conflicts with a supervisor;
(c) Actual or perceived threat of loss of a job, demotion, or disciplinary action;
(d) Relationships with supervisors, coworkers, or the public;
(e) Specific or general job dissatisfaction;
(f) Work load pressures;

21

(g) Subjective perceptions of employment conditions or environment;

(h) Loss of job or demotion for whatever reason;

(i) Fear of exposure to chemicals, radiation biohazards, or other perceived hazards;

(j) Objective or subjective stresses of employment;

(k) Personnel decisions;

(l) Actual, perceived, or anticipated financial reversals or difficulties occurring to the businesses of self-employed individuals or corporate officers.

(2)(a) Stress resulting from exposure to a single traumatic event will be adjudicated as an industrial injury. See RCW 51.08.100.

(b) Examples of single traumatic events include: Actual or threatened death, actual or threatened physical assault, actual or threatened sexual assault, and life-threatening traumatic injury.

(c) These exposures must occur in one of the following ways:

(i) Directly experiencing the traumatic event;

(ii) Witnessing, in person, the event as it occurred to others; or

(iii) Extreme exposure to aversive details of the traumatic event.

(d) Repeated exposure to traumatic events, none of which are a single traumatic event as defined in subsection (2)(b) and (c) of this section, is not an industrial injury (see RCW 51.08.100) or an occupational disease (see [former] RCW 51.08.142). A single traumatic event as defined in subsection (2)(b) and (c) of this section that occurs within a series of exposures will be adjudicated as an industrial injury (see RCW 51.08.100).

WAC 296-14-300(2) subsections (b) and (c) provide examples and criteria for industrial injury claims for mental conditions or mental disabilities caused by stress that are not precluded from coverage. WAC 296-14-300(2)(d) clarifies that a single traumatic event that occurs within a series of exposures will be treated as an industrial injury, but repeated traumatic events are otherwise precluded from coverage as an industrial injury or occupational disease. Construing all the language of WAC 296-14-300(2)(d), we conclude the phrase "[r]epeated exposure to traumatic events" modifies "none of which are a single traumatic event as defined in subsection (2)(b) and (c) of this section" and the provision that "[a] single traumatic event . . . that occurs within a series of exposures will be adjudicated as an industrial injury." WAC 296-14-300(2)(d).

The IIA does not define "stress." LaRose cites dictionary definitions of "stress"[13] and "trauma"[14] to argue former RCW 51.08.142 excludes only claims for mental conditions or mental disabilities caused by "stress" and not mental conditions or disabilities caused by "trauma." "Dictionaries are an appropriate source of plain meaning when the ordinary definition furthers the statute's purpose. But the ordinary definition of a term is not dispositive of a statute's plain meaning when the term is also a term of art." Gorre v. City of Tacoma, 184 Wn.2d 30, 37, 357 P.3d 625 (2015).[15]

Here, dictionary definitions do not further the express intent of the legislature to exclude mental conditions and mental disabilities caused by stress. The IIA, the DSM, and the uncontroverted medical evidence in the record support the conclusion that use of the phrase "mental conditions or mental disabilities caused by stress" is a medical term of art. An injured worker under the IIA is entitled to "receive proper and necessary medical and surgical services." RCW 51.36.010(2)(a). The causal connection between a worker's mental condition or mental disability and employment must be established by medical testimony. Dennis, 109 Wn.2d at 477; Street v. Weyerhaeuser Co., 189 Wn.2d 187, 196-97, 399 P.3d 1156 (2017). The legislature gives the Department the authority to make rules regarding the provision of medical care and treatment. RCW 51.04.020, .030. The DSM is the authoritative psychiatric treatise that defines the criteria to

---

[13] Webster's Third New International Dictionary, at 2260 (2002), defines "stress" as "a physical, chemical, or emotional factor (as trauma, histamine, or fear) to which an individual fails to make a satisfactory adaptation, and which causes physiologic tensions that may be a contributory cause of disease."

[14] The dictionary defines "trauma" as "a psychological or emotional stress or blow that may produce disordered feelings or behavior" and "the state or condition of mental or emotional shock produced by such a stress or by a physical injury." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, at 2432.

[15] Citation omitted.

diagnose mental disorders, including PTSD. The uncontroverted testimony of Dr. Hunt establishes the interrelationship between "stress" and "trauma" in diagnosing PTSD. Hunt testified the diagnosis of PTSD requires "an antecedent stressor" to a traumatic event:

> Specifically, Post Traumatic Stress Disorder (PTSD), a type of trauma and stress related disorder includes specific and explicit criteria which requires an antecedent stressor of an "[e]xposure to actual or threatened death, serious injury[,] or sexual violence" to have occurred, through personal exposure, witnessing these events happen to others, learning of [an] event happening to [a] person close to the individual, or repeated and extreme exposure to the details of those traumatic events.[ ] (DSM-5, Pg. 271).

We hold the adoption of WAC 296-14-300(2)(d) is a valid rule within the agency's delegated authority. WAC 296-14-300(2)(d) is consistent with allowing a claim for mental conditions or mental disabilities caused by stress that meet the definition of industrial injury and the express statutory directive under former RCW 51.08.142 to exclude stress-related occupational disease coverage for mental conditions or disabilities caused by "[r]epeated exposure to traumatic events."[16]

Recent legislative amendments support our conclusion. In 2018, the legislature enacted a new section to define PTSD as a disorder that meets the criteria of DSM-5. LAWS OF 2018, ch. 264, § 1 (codified at RCW 51.08.165). RCW 51.08.165 states:

> "Posttraumatic stress disorder" means a disorder that meets the diagnostic criteria for posttraumatic stress specified by the American psychiatric association in the diagnostic and statistics manual of mental disorders, fifth edition, or in a later edition as adopted by the department in rule.

---

[16] Accordingly, WAC 296-14-300(2)(d) is a legislative rule. See Ass'n of Wash. Bus. v. Dep't of Revenue, 155 Wn.2d 430, 446-47, 120 P.3d 46 (2005). Without citation to authority, LaRose argues for the first time that if the rule is valid, "then the legislature has unconstitutionally delegated a legislative function to an administrative agency without any standards, guidelines, or safeguards." We decline to consider an argument unsupported by legal analysis. Schroeder v. Excelsior Mgmt. Grp., LLC, 177 Wn.2d 94, 108, 297 P.3d 677 (2013).

In 1987, the legislature created a prima facie rebuttable presumption that respiratory disease is an occupational disease for firefighters under RCW 51.08.140. LAWS OF 1987, ch. 515, § 2 (codified at RCW 51.32.185).

> The legislature finds that the employment of fire fighters exposes them to smoke, fumes, and toxic or chemical substances. The legislature recognizes that fire fighters as a class have a higher rate of respiratory disease than the general public. The legislature therefore finds that respiratory disease should be presumed to be occupationally related for industrial insurance purposes for fire fighters.

LAWS OF 1987, ch. 515, § 1. The legislature amended the statute in 2002 and 2007 to apply the occupational disease presumption of respiratory disease to supervisors and include other conditions related to exposure to "smoke, fumes, or toxic substances." LAWS OF 2002, ch. 337, § 2; LAWS OF 2007, ch. 490, § 2.

In 2018, the legislature amended RCW 51.32.185 to apply the presumption to law enforcement officers and add PTSD as a prima facie presumption of an occupational disease. LAWS OF 2018, ch. 264, § 3. Former RCW 51.32.185 (2018) provides, in pertinent part:

> [(1)](b) In the case of firefighters as defined in *RCW 41.26.030(16) (a), (b), (c), and (h) and firefighters, including supervisors, employed on a full-time, fully compensated basis as a firefighter of a private sector employer's fire department that includes over fifty such firefighters, and law enforcement officers as defined in *RCW 41.26.030(18) (b), (c), and (e), who are covered under this title, there shall exist a prima facie presumption that posttraumatic stress disorder is an occupational disease under RCW 51.08.140.[17]
>
> . . . .
>
> (5) The presumption established in subsection (1)(b) of this section only applies to active or former firefighters as defined in *RCW 41.26.030(16) (a), (b), (c), and (h) and firefighters, including supervisors,

_____

[17] (Emphasis added.) Former RCW 51.32.185(6) (2018) states:

If the employer does not provide the psychological exam as specified in RCW 51.08.142[(2)(b)] and the employee otherwise meets the requirements for the presumption established in subsection (1)(b) of this section, the presumption applies.

employed on a full-time, fully compensated basis as a firefighter of a private sector employer's fire department that includes over fifty such firefighters, and law enforcement officers as defined in *RCW 41.26.030(18) (b), (c), and (e) who have posttraumatic stress disorder that develops or manifests itself after the individual has served at least ten years. [18]

The legislature amended former RCW 51.08.142 to specifically exempt firefighters, supervisors, and law enforcement officers from the exclusion for "claims based on mental conditions or mental disabilities caused by stress [that] do not fall within the definition of occupational disease." LAWS OF 2018, ch. 264, § 2. As amended, RCW 51.08.142 states:

> **"Occupational disease"—Exclusion of mental conditions caused by stress, except for certain firefighters.** (1) Except as provided in subsection (2) of this section, the department shall adopt a rule pursuant to chapter 34.05 RCW that claims based on mental conditions or mental disabilities caused by stress do not fall within the definition of occupational disease in RCW 51.08.140.
>
> (2)(a) Except as provided in (b) and (c) of this subsection, the rule adopted under subsection (1) of this section shall not apply to occupational disease claims resulting from posttraumatic stress disorders of firefighters as defined in *RCW 41.26.030(16) (a), (b), (c), and (h) and firefighters, including supervisors, employed on a full-time, fully compensated basis as a firefighter of a private sector employer's fire department that includes over fifty such firefighters, and law enforcement officers as defined in *RCW 41.26.030(18) (b), (c), and (e).
>
> (b) For firefighters as defined in *RCW 41.26.030(16) (a), (b), (c), and (h) and firefighters, including supervisors, employed on a full-time, fully compensated basis as a firefighter of a private sector employer's fire department that includes over fifty such firefighters, and law enforcement officers as defined in *RCW 41.26.030(18) (b), (c), and (e) hired after June 7, 2018, (a) of this subsection only applies if the firefighter or law enforcement officer, as a condition of employment, has submitted to a

---

[18] "*Reviser's note: RCW 41.26.030 was amended by [Laws of] 2018[,] c[hapter] 230[,] [section] 1, changing subsections (16) and (18) to subsections (17) and (19), respectively." In the most recent amendment to RCW 51.08.142 in 2019, the legislature applied the presumption for firefighters, supervisors, and law enforcement officers to "public employee fire investigators." LAWS OF 2019, ch. 133, § 1.

26

psychological examination administered by a psychiatrist licensed in the state of Washington under chapter 18.71 RCW or a psychologist licensed in the state of Washington under chapter 18.83 RCW that ruled out the presence of posttraumatic stress disorder from preemployment exposures. If the employer does not provide the psychological examination, (a) of this subsection applies.

(c) Posttraumatic stress disorder for purposes of this subsection (2) is not considered an occupational disease if the disorder is directly attributed to disciplinary action, work evaluation, job transfer, layoff, demotion, termination, or similar action taken in good faith by an employer.[19]

In sum, the Department had the express authority to adopt WAC 296-14-300(2)(d). We reverse the superior court decision and the award of attorney fees. We affirm the decision of the Board to deny the occupational disease claim for PTSD and major depressive disorder.

Schindler, J.P.T.

WE CONCUR:

Mann, ACJ

Dwyer, J.

---

[19] "*Reviser's note: RCW 41.26.030 was amended by [Laws of] 2018[,] c[hapter] 230[,] [section] 1, changing subsections (16) and (18) to subsections (17) and (19), respectively."

* The Washington Supreme Court has appointed Judge Schindler to serve as a judge pro tempore pursuant to RCW 2.06.150.